IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 7, 2012 Session

# IN RE: THE ADOPTION OF ANGELA E. ET AL.

**Appeal by Permission from the Court of Appeals, Western Section**
**Chancery Court for Madison County**
**No. 56951    William C. Cole, Chancellor**

---

**No. W2011-01588-SC-R11-PT - Filed March 13, 2013**

---

In a prior appeal in this case, we reversed the termination of Father's parental rights and remanded to the trial court for a new hearing on Mother and Stepfather's amended petition. Following the hearing on remand, the trial court declined to terminate Father's parental rights, finding that Mother and Stepfather had not proven either proffered ground for abandonment by clear and convincing evidence. Mother and Stepfather appealed. In a divided opinion, a majority of the Court of Appeals concluded that the evidence clearly and convincingly established abandonment by both willful failure to visit and willful failure to support. We hold that Mother and Stepfather established by clear and convincing evidence abandonment by willful failure to visit but failed to establish willful failure to support. Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals. Because Mother and Stepfather have demonstrated one ground for termination of Father's parental rights, we remand the case to the trial court to consider whether termination is in the best interests of the children.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed in Part and Reversed in Part**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Bede Anyanwu, Jackson, Tennessee, for the appellant, Ifeatu E.

Michael A. Carter, Milan, Tennessee, for the appellees, Siegfried T. and Vernessa T.

**OPINION**

**I. Facts and Procedural History**

Ifeatu E. ("Father") and Vernessa T. ("Mother") were divorced in 2001. Prior to the divorce, Father and Mother had three children: Angela E., Ekene E., and Ember E. ("the children"). Since the divorce, Father and Mother have contentiously litigated their rights and obligations relative to the children, including a prior appeal in which Father succeeded in overturning a voluntary termination of his parental rights. See In re Angela E., 303 S.W.3d 240, 242 (Tenn. 2010). In the prior appeal, we remanded the case to the trial court for a new hearing on Mother and Stepfather's petition for termination of Father's parental rights. In re Angela E., 303 S.W.3d at 256.

At the hearing on remand, the proof showed that Father exercised his parenting time with the children after the parties' divorce. Mother, however, complained that Father left the children unsupervised, resulting in the children being unfed, poorly clothed, and prone to injury. Father countered that the children were supervised by his office staff or his girlfriend because he was busy working "24-7." Mother filed a petition for contempt in July 2002 alleging that Father had not met various court-ordered financial obligations. Father failed to appear at the hearing on the petition, and on August 14, 2002, the trial court found Father in contempt for failing to meet his financial obligations.[1]

The August 14, 2002 order also suspended Father's visitation with the children. The order provided in pertinent part:

> The Court further heard testimony pertaining to the circumstances of visitation and the parties' minor children which indicated that the children might suffer irreparable harm when they are in the custody and control of [Father]. The Court finds that it is in the best interest of the children and for their protection and safety that [Father's] visitations with the parties['] minor children be suspended until further Orders of the Court. [Father] may file a Petition with the Court to have a hearing thereon at his earliest convenience.

In July 2003, Father's counsel filed a petition to reinstate visitation. Father claims he never received notice of the date of the hearing on the petition to reinstate visitation and therefore failed to appear. In September or October 2004, Father began working in California for a salary of $120,000 per year. Father's counsel withdrew in March 2005,

---

[1] The record reflects that Father purged himself of contempt on August 28, 2002.

stating that he had not been in contact with Father since December 2004 despite repeated efforts.

On July 5, 2005, Mother filed a petition for termination of Father's parental rights. On September 7, 2005, Mother and Stepfather filed an amended petition for termination of Father's parental rights and petition for adoption by a stepparent.

After a hearing on January 20 and 21, 2011, the trial court entered an order reflecting its findings of fact and conclusions of law. The trial court concluded that Mother and Stepfather had not demonstrated by clear and convincing evidence that Father had abandoned the children and declined to terminate Father's parental rights. The trial court noted that in the four-year period between the divorce and the filing of the petition to terminate, Father paid in excess of $40,000, most of which was paid during a period in which he was unemployed. In the relevant four-month period prior to the filing of the petition for termination of parental rights, he resumed making child support payments, which the trial court concluded were not "token payments." The trial court also rejected abandonment by failure to visit as a ground for termination "in light of the court order suspending Father's visitation."

Mother and Stepfather appealed, asserting that the trial court erred in determining that they had not shown by clear and convincing evidence Father's abandonment of the children either by willfully failing to visit them or by willfully failing to support them. In a divided opinion, a majority of the Court of Appeals reversed the trial court's judgment, holding that the prior order suspending Father's visitation rights did not preclude a finding that Father willfully failed to visit the children. In re Angela T., No. W2011-01588-COA-R3-PT, 2012 WL 586864, at *7 (Tenn. Ct. App. Feb. 23, 2012).[2] The majority opinion further held that the evidence clearly and convincingly established that Father abandoned the children by willfully failing to make reasonable payments toward their support. In re Angela T., 2012 WL 586864, at *11. Concurring in part and dissenting in part, Judge Holly M. Kirby agreed with the majority's conclusion that Father abandoned his children by willfully failing to visit them. Judge Kirby disagreed, however, that abandonment by failure to support was shown by clear and convincing evidence in light of Father's payment history during the relevant four-month period prior to the filing of the termination petition. In re Angela T., 2012 WL 586864, at *11 (Kirby, J., concurring in part and dissenting in part). The Court of Appeals remanded the case to the trial court to determine whether the termination was in the best interests of the children, as required by statute. In re Angela T., 2012 WL 586864, at *11. We granted permission to appeal.

---

[2] The first letter of the children's last name is "E" and not "T" as reflected in the notice of appeal and the opinion of the Court of Appeals.

## II. Analysis

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is the best interest of the child. Tenn. Code Ann. § 36-1-113(c) (2010 & Supp. 2012); In re Valentine, 79 S.W.3d 539, 546 (Tenn. 2002). When a trial court has made findings of fact, we review the findings de novo on the record with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); In re Taylor B. W., __ S.W.3d __, __ (Tenn. 2013). We next review the trial court's order de novo to determine whether the facts amount to clear and convincing evidence that one of the statutory grounds for termination exists and if so whether the termination of parental rights is in the best interests of the children. Taylor B. W., __ S.W.3d at __. Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." In re Valentine, 79 S.W.3d at 546 (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)) (internal quotation marks omitted).

Abandonment is one of the grounds for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). Abandonment is defined as the willful failure to visit, to support, or to make reasonable payments toward the support of the child during the four-month period preceding the filing of the petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i) (2010). To prove the ground of abandonment, a petitioner must establish by clear and convincing evidence that a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so. In re Audrey S., 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law. In re Adoption of A.M.H., 215 S.W.3d 793, 810 (Tenn. 2007). We review questions of law de novo with no presumption of correctness. In re Adoption of A.M.H., 215 S.W.3d at 810.

We begin our analysis with the ground of abandonment based on willful failure to support. Willful failure to support or to make reasonable payments toward support means "the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control. See In re Adoption of A.M.H., 215 S.W.3d at 810 (holding that the evidence did not support a finding that the parents "intentionally abandoned" their child). A parent may not attempt to rectify abandonment by resuming payments of support subsequent to the filing of "any petition"

-4-

seeking to terminate parental rights or seeking to adopt a child. Tenn. Code Ann. § 36-1-102(1)(F).

In this case, the original petition for termination of parental rights was filed on July 5, 2005. Although the petition was later amended in September 2005, the relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the original petition. Tenn. Code Ann. § 36-1-102(1)(A)(i); see, e.g., In re D.L.B., 118 S.W.3d 360, 366 (Tenn. 2003). We therefore look to payments made by Father between March 5, 2005, and July 5, 2005.[3]

A party seeking termination of parental rights must prove by clear and convincing evidence that the opposing party had the capacity to pay support but made no attempt to do so and did not possess a justifiable excuse. See In re Audrey S., 182 S.W.3d at 860, 864. Token support payments are not sufficient to preclude a finding of a willful failure to support. Token support is support that "under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). In the context of token support, the word "means" connotes both income and available resources for the payment of debt. In re Z.J.S., No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *11 n.24 (Tenn. Ct. App. June 3, 2003); see also Black's Law Dictionary 1070 (9th ed. 2009).

Mother and Stepfather contend that Father had the ability to pay his child support obligation in full and that his payment of $3500 of the $10,336 owed[4] between March 2005 and July 2005 was insufficient given his means. The evidence concerning Father's income and expenses is limited at best, however, and we conclude that Mother and Stepfather failed to prove that Father's payment history between March 5, 2005, and July 5, 2005, reflected mere "token support."

The trial court found that Father was unemployed from 2002 when he lost his Tennessee license to practice medicine until 2004 when he moved to California and accepted

---

[3] Father's argument that the four-month period should be measured by the date of the amended petition is not well founded. The original petition to terminate parental rights asserted the ground of abandonment by willful failure to support. The amended petition to terminate parental rights alleged abandonment by willful failure to visit but did not include the ground of abandonment by willful failure to support. It is apparent from the record, however, that the parties presented evidence as to both grounds at trial without objection and that the trial court expressly ruled on both grounds. See Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). That both issues were tried by consent, however, does not alter the relevant four-month period under Tennessee Code Annotated section 36-1-102(1)(A)(i), which commences at the filing of the original petition.

[4] In addition to his $2500 monthly child support obligation, Father was obligated to pay $84 per month in medical insurance premiums, which he did not pay.

a job with a starting salary of $120,000. Within six months, he was promoted to medical director. By 2005, Father's work for two separate clinics in California yielded an annual income of $150,000. After obtaining employment in California, Father resumed making child support payments. From January 1, 2005, through July 5, 2005, Father paid a total of $7000 in child support. For the four-month period immediately preceding the filing of the petition to terminate parental rights, Father paid $3500 in child support to Mother. No evidence was introduced concerning Father's monthly expenses.

Father also began the construction of a home in Jackson, Tennessee, in 2004 with proceeds from the May 2003 sale of his property in Franklin, Tennessee. Father valued the Jackson home at $300,000 to $400,000, which was not subject to a lien in any amount. At the time of the hearing in January 2011, Father testified that he had invested $600,000 in building the home in Jackson but that it remained incomplete.

The trial court concluded that Father's payment of $3500 during the four months immediately preceding the filing of the petition for termination precluded a finding of abandonment. The evidence does not preponderate against the trial court's factual findings on which this determination is based. Our review of the record supports the conclusion that Mother and Stepfather failed to prove by clear and convincing evidence that Father's payment history constituted abandonment by willful failure to support.

Although we have concluded that the record does not support the ground of abandonment based on willful failure to support, only one of the statutory grounds need be proven for termination of parental rights. In re D.L.B., 118 S.W.3d at 367. We next turn to the ground of abandonment based on willful failure to visit.

Father does not dispute that he failed to visit the children during the relevant four-month period. He argues instead that his actions were not willful because his visitation with the children had been suspended by court order. The Court of Appeals disagreed with the trial court's implicit conclusion that the court order suspending his visitation precluded a finding that Father willfully failed to visit. In re Angela T., 2012 WL 586864, at *7. The Court of Appeals relied on State of Tennessee Department of Children's Services v. J.A.H., No. E2005-00860-COA-R3-PT, 2005 WL 3543419, at *5 (Tenn. Ct. App. Dec. 28, 2005) (holding that a father's decision not to submit to drug testing to lift an order preventing visitation constituted a willful decision not to visit), and In re Elijah B., No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *8 (Tenn. Ct. App. Dec. 29, 2010) (holding that a father's failure to resolve his drug addiction, as required by the permanency plan, constituted grounds for termination of his parental rights). Father argues that these cases are distinguishable because, in contrast to submitting to a drug test or fulfilling the requirements of a permanency plan, no simple and quick action could have been taken to restore visitation

with his children. He asserts that "the lawsuit [to restore his visitation rights] did stall to a degree, but it was ongoing." The record does not support Father's assertion.

At the time of the filing of the petition to terminate parental rights in July 2005, Father had not exercised parenting time with the children for almost three years. He had taken no steps to have his parenting time reinstated despite language in the August 2002 order providing that he could petition the trial court for "a hearing thereon at his earliest convenience." After filing the petition to reinstate visitation in July 2003, Father took no further action to pursue the matter. He did not attempt to see the children until after the original termination petition was filed in July 2005. As the Court of Appeals observed, this is not a case in which a parent was actively trying to maintain visitation. Cf. In re Adoption of A.M.H., 215 S.W.3d at 810 (noting that although the parents did not visit during the four-month period, they were actively pursuing legal proceedings to regain custody); In re Chelbie F., No. M2006-01889-COA-R3-PT, 2007 WL 1241252, at *6 (Tenn. Ct. App. Apr. 27, 2007) (noting that the father was actively pursuing a court order to establish visitation rights).

We agree with the Court of Appeals that the prior order suspending Father's visitation rights did not preclude a finding that Father willfully failed to visit the children. A preponderance of the evidence supports the conclusion that Father willfully failed to visit his children between July 2003 and July 2005. Although Father filed a petition to reinstate his visitation rights, he took no action to advance the petition. Father had no reasonable excuse for failing to pursue the petition to reinstate visitation during those two years. We therefore conclude that the record contains clear and convincing evidence supporting termination of Father's parental rights on the ground of abandonment based on willful failure to visit.

Finally, Father raises the issue of whether his constitutional rights of due process and equal protection have been violated because he did not receive notice of the grounds for abandonment prior to the filing of the termination petition. This issue was raised for the first time in Father's application for permission to appeal to this Court. We will not address questions that were not raised in the trial court. Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983); see also Tenn. R. App. P. 36(a).

### III. Conclusion

We affirm in part and reverse in part the judgment of the Court of Appeals. Mother and Stepfather have established by clear and convincing evidence the ground of abandonment based on Father's willful failure to visit the children during the four consecutive months immediately preceding the filing of the termination petition. Because the trial court did not reach the issue of whether termination of Father's parental rights is in the best interests of the children, we remand the case for the trial court to consider whether

termination of Father's parental rights is in the best interests of the children.  Costs of this appeal are taxed to Ifeatu E., for which execution may issue, if necessary.

_____

JANICE M. HOLDER, JUSTICE
