# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs February 25, 2015

## IN RE: JARETT M.

### Direct Appeal from the Chancery Court for Dyer County
### No. 13AA12     Tony A. Childress, Chancellor

---

### No. W2014-01995-COA-R3-PT – Filed April 13, 2015

---

This is a parental termination case.  Father appeals the trial court's termination of his parental rights with regard to the minor child at issue.  The trial court terminated Father's parental rights based on its finding, by clear and convincing evidence, that Father abandoned the child by willful failure to visit and willful failure to support the child.  The trial court further found, by clear and convincing evidence, that termination was in the best interests of the child.  We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J.,W.S., and KENNY ARMSTRONG, J., joined.

Vanedda Prince Webb, Dyersburg, Tennessee, for the appellant, Gary S.

John W. Palmer and Julie W. Palmer, Dyersburg, Tennessee, for the appellees, Kenneth Matthew H. and Crystal H.

### OPINION

### I.     BACKGROUND AND PROCEDURAL HISTORY

Jarett M. (the "child") was born in 2008 in Dyersburg, Tennessee to Petitioner/Appellee Crystal H. ("Mother") and Respondent/Appellant Gary S. ("Father").[1]  Mother and Father were never married but lived together as a couple with Mother's father, Bobby M., after the child's birth.  In June 2010, Mother and Father

---

[1]In termination of parental rights cases, it is the policy of this Court to remove the names of minor children and other parties in order to protect the identities of the children involved.

separated; Mother and the child continued living with Bobby M. Between June 2010 and June 2011, Father had visitation with the child on several occasions. In June 2011, Mother married Petitioner/Appellant Kenneth Matthew H. (hereinafter "Stepfather" or "Matthew H."). Mother testified that she stopped hearing from Father around that time and that he had not had visitation with the child since then.

On October 2, 2013, Mother and Stepfather filed a Petition for Adoption in the Dyer County Chancery Court seeking to terminate Father's parental rights and seeking court approval of Stepfather's adoption of the child ("original petition"). Though the original petition sought termination of Father's parental rights, it did not allege facts serving as basis for the termination. On March 27, 2014, Father filed a response and counter-petition seeking dismissal of the original petition for failure to allege such facts and seeking an order to establish parenting time with the child. Mother and Stepfather subsequently filed a motion to amend the original petition, which the trial court granted. On July 23, 2014, Mother and Stepfather filed an "Amended and Restated Petition for Adoption" ("amended petition"). As grounds for termination, the amended petition alleged that Father had willfully failed and neglected to exercise any visitation with the child for over one year prior to the filing of the original petition. The amended petition further alleged that Father had willfully failed and neglected to provide financial support of any kind to the child for over one year immediately preceding the filing of the original petition. The amended petition also sought court approval of Matthew H.'s adoption of the child.

The trial court conducted a bench trial on the amended petition on August 28, 2014. The trial court heard testimony from Mother, Father, Stepfather, Bobby M., and several other relatives of both Mother and Father. The trial court announced its decision at the conclusion of the bench trial and entered a written order on September 24, 2014. For reasons discussed in further detail below, the trial court found that Mother and Stepfather demonstrated by clear and convincing evidence that Father abandoned the child by failing to visit or provide support for the child from June 2011 through the date of the hearing. The trial court also found that termination of Father's parental rights was in the child's best interest. Additionally, the trial court found that the adoption of the child by Stepfather was in the child's best interests. Based on its findings, the trial court terminated the parental rights of Father and ordered that "[t]he relationship of parent and child be . . . established between [Stepfather] and the child as if the child had been born to Stepfather." Father filed a timely appeal.

## II. ISSUES PRESENTED

Father presents the following issues, which we have slightly reworded, for review on appeal:

1. Whether the trial court erred in considering Father's actions in the four-month period preceding the filing of the original petition to determine whether Father abandoned the child.

2. Whether the trial court erred in finding that Father's failure to visit or support the child was willful.

## III. STANDARD OF REVIEW

To terminate parental rights, a court must determine, by clear and convincing evidence, the existence of at least one of the statutory grounds for termination and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c) (2014); *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013). On appeal, we review the trial court's findings of fact *de novo* on the record with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). Next, we review the trial court's order *de novo* to determine whether the facts amount to clear and convincing evidence that one of the statutory grounds for termination exists and, if so, whether the termination of parental rights is in the best interests of the child. *Taylor B.W.*, 397 S.W.3d at 112. Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)) (internal quotation marks omitted).

## IV. GROUNDS FOR TERMINATION

The trial court's termination of Father's parental rights was premised on two separate grounds: abandonment for willful failure to visit the child and abandonment for willful failure to support the child.[2] We will examine each of the statutory grounds in turn, beginning with the trial court's finding of abandonment for willful failure to visit.

### *Willful Failure to Visit the Child*

Parental rights may be terminated for abandonment under Tennessee Code Annotated section 36-1-102(1)(A)(i) and 36-1-113(g)(1) where a parent "willfully" fails to visit the child for the four months preceding the filing of the petition to terminate that parent's rights. Failure to visit a child is considered "willful" when the parent is aware of

---

[2]The parental duty of support is separate and distinct from the parental duty of visitation. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005).

his or her duty to visit, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). However, where the failure to visit is not willful, a failure to visit the child during the applicable four-month period does not constitute abandonment. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). A parent may not attempt to rectify abandonment by resuming visitation or support subsequent to the filing of "any petition" seeking to terminate parental rights or seeking adoption of a child. Tenn. Code Ann. § 36-1-102(1)(F); *see also In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013).

Father challenges the trial court's finding of "willful" failure to visit on two grounds: (1) that he made an attempt to visit the child within the four months preceding the filing of the amended petition, and (2) that he had a justifiable reason for not visiting the child. We address each of his contentions separately.

First, Father argues that the trial court erred in considering the four month period prior to the original petition because the original petition failed to allege a basis for termination of Father's parental rights as required by statute. *See* Tenn. Code Ann. § 36-1-113(d)(2)(D) ("The petition, or allegations in the adoption petition, shall state . . . [a]ny other facts that allege the basis for termination of parental rights . . . ."). Father argues that because the original petition was insufficient, the trial court should have disregarded it and only considered the four months preceding the filing of the amended petition on July 23, 2014. Father therefore argues that his failure to visit was not intentional because he made an attempt to visit the child by filing a counter-petition seeking to establish a parenting schedule on March 27, 2014, within the four-month period preceding the filing of the amended petition.

In support of his first contention, Father relies on *In re A.S.C.*, No. E2013-01830-COA-R3-PT, 2014 WL 4269114 (Tenn. Ct. App. Aug. 29, 2014). In *In re A.S.C.*, the mother filed an original petition alleging that the child's father had abandoned the child and seeking to terminate the father's parental rights without joining any other party as a petitioner. *Id.* at *2. The mother subsequently married and joined her husband (the child's stepfather) in filing an amended petition seeking to terminate the father's parental rights and to allow the stepfather to adopt the child. *Id.* The trial court granted the amended petition after finding that the father willfully failed to provide support or to visit the child in the four months immediately preceding filing of the mother's original petition. *Id.* at *3. This Court reversed on appeal, holding that because the statutes governing parental termination do not permit one parent to seek termination of the other parent's parental rights, the mother "clearly lack[ed] standing to file a petition to terminate [the father's] rights by herself," and the original petition was null and void. *Id.* at *6. This Court held that because the original petition was "ineffectual for all purposes," Rule 15.03 of the Tennessee Rules of Civil Procedure providing for the

4

"relation back" of amendments to the filing of an original pleading was not applicable. *Id.* This Court therefore determined that the trial court erred in considering the father's actions during the four-month period preceding the filing of the original petition and that the trial court should have considered the four-month period preceding the filing of the amended complaint. *Id.* at *7.

*In re A.S.C.* is distinguishable from the present case. The original petition in this case was filed jointly by Mother and Stepfather seeking termination of Father's parental rights and seeking adoption of the child. As such, unlike the original petition in *In re A.S.C.*, the original petition in this case cannot be considered null and void for lack of standing. *See* Tenn. Code Ann. § 36-1-113(b) (providing that "[t]he prospective adoptive parent or parents" have standing to file a parental termination petition). While the original petition in this case lacked a recitation of the facts that alleged the basis for termination, it contained allegations sufficient to advise Father of the claim. Moreover, the complaint sufficiently set forth that Mother and Stepfather sought adoption of the child. As such, the relevant inquiry in this case is whether the evidence presented clearly and convincingly demonstrates that Father willfully failed to visit the child in the four-month period immediately preceding filing of the original complaint on October 2, 2013. Father's attempt to rectify abandonment by filing of a counter-petition seeking to establish a parenting schedule on March 27, 2014 is therefore not relevant.[3]

For his second contention, Father asserts that his failure to visit was not "willful" because he had justifiable reasons for not visiting. Although Father admitted during the August 28, 2014 hearing that he had not visited the child in roughly two and a half years, he contends that his efforts to do so were impeded by Bobby M., who he alleged had attacked Father on one occasion and later threatened to shoot Father if he came onto his property.

Father correctly notes that when a parent attempts to visit or maintain relations with his or her child and is thwarted by the conduct of others, the failure to visit is not necessarily willful. *See In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). However, the conduct of others does not excuse a biological parent's failure to visit unless the conduct that prevents the parent from performing his or her duty amounts to a "significant restraint or interference" with the parent's effort to visit the child. *See In re Adoption of Kleshinski*, No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at *20 (Tenn. Ct. App. May 4, 2005). This Court has set forth a non-exhaustive list of conduct

_____

[3]Because it is not relevant to our disposition of this appeal, we decline to address whether Father's filing of a petition seeking a parenting schedule, if it had been made in the applicable four-month period, would have constituted "making an attempt" to visit the child such that his failure to visit would not have been considered "willful."

that amount[s] to a significant restraint or interference with a parent's efforts to develop a relationship with a child: (1) telling a man he is not the child's biological father; (2) blocking access to the child[;] (3) keeping the child's whereabouts unknown; (4) vigorously resisting the parent's efforts to support the child; or (5) vigorously resisting a parent's efforts to visit the child.

*Id.* (citing *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 n.8 (Tenn. Ct. App. Nov. 25, 2003)).

The evidence presented to the trial court does not support Father's assertion that his right to visit the child was significantly restrained or interfered with. During the hearing, multiple parties testified regarding a physical altercation in 2010 between Father and Bobby M. during which Bobby M. hit Father in the head with a stick. Father testified that, during the altercation, Bobby M. threatened to kill him. Father testified that following the altercation, he, Mother, and the child stayed with his mother for about a week. Shortly thereafter, however, Father and Bobby M. made amends. Bobby M. offered to let Father move back into his house, and Father, Mother, and the child resumed living there. Additionally, Father testified that after he and Mother split for the last time, Bobby M. threatened to shoot him if he set foot on the property again.

The trial court did not find that Father's volatile relationship with Bobby M. significantly restrained or interfered with his ability to exercise visitation with the child, stating that "any threats made to [Father] did not prevent [Father] from visiting the child or from financially providing for the child." Our review of the record confirms the trial court's findings. Mother testified that she had not had any contact with Father since July or August 2011. The only explanation Father provided for the lack of contact was that Mother would not take his calls. Father did not identify any other efforts by Mother, Bobby M., or anyone else to impede his visitation with the child in the two years preceding trial. Though Father acknowledged that he knew where Mother and the child had been living since that time, he did not make any effort to visit or send letters. Father claimed to have purchased birthday and Christmas presents for the child but admitted they were still in his closet because "[t]hey would not let me send them to him." Father did not contact any attorneys to establish visitation, nor did he contact the court directly or take any legal action to enforce his right to visit the child prior to the filing of the original petition. Father did not offer any explanation for failing to send the child's presents or for not using the courts to establish his visitation rights.

The evidence in the record clearly and convincingly establishes that Father did not attempt to contact or visit the child for well over four months preceding the filing of the petition. Accordingly, we affirm the trial court's finding that Father willfully failed to

visit the child during the four-month period preceding the filing of the petition. We next consider whether Father willfully failed to support the child.[4]

## *Willful Failure to Support the Child*

Parental rights may also be terminated for abandonment under Tennessee Code Annotated section 36-1-102(1)(A)(i) and 36-1-113(g)(1) where a parent "willfully" fails to support the child for the four months preceding the filing of the petition to terminate that parent's rights. A parent's "[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support." *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005). Parents are presumed to know that they have a duty to support their children. *See* Tenn. Code Ann. § 36-1-102(1)(H). Further, interference with a parent's attempts to visit the child does not excuse the parent from his or her obligation to support the child financially. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005).

Father only presents one argument in opposition to the trial court's finding that he willfully failed to support the child. Father argues that the trial court erred in considering the four months prior to the original petition. Father contends that the trial court should have considered the four months prior to the filing of the amended petition and that his failure to support the child during that time was not intentional because he filed a counter-petition seeking to establish a parenting schedule during that period of time. We have already rejected this argument with regard to the termination of Father's parental rights for failure to visit and see no reason to address it again here. In making its determination, the trial court correctly considered the four-month period immediately preceding the filing of the original petition.

The evidence in the record also supports the trial court's finding that Father willfully failed to support the child for well over four months preceding the filing of the original petition. Father conceded at trial that although he was employed in 2011, 2012, 2013, and 2014, he did not provide any financial support to Mother or the child during that time. As noted above, although Father claimed to have purchased birthday and Christmas presents for the child, he admitted that they were never delivered to the child. Father testified that he visited the child support office on one occasion in 2012 for the purpose of setting up child support but was arrested on arrival for a failure to appear for incarceration in an unrelated matter. Father did not indicate that he made any further

---

[4]Although only one ground is necessary to justify termination of parental rights, the Tennessee Supreme Court has asked this Court to review each of the grounds for termination as a matter of policy to prevent unnecessary remands in light of "the importance of permanently placing children and the just, speedy resolution of [termination] cases." *In re Adoption of Angela E.*, 303S.W.3d 240, 251 n.14 (2010).

attempts to fulfill his obligation to support the child.

For the foregoing reasons, we affirm the trial court's finding that Father abandoned the child by willfully failing to support the child during the four-month period preceding the filing of the original petition.

## V. BEST INTEREST OF THE CHILD

Once the trial court has found at least one statutory ground for termination of a person's parental rights, it must engage in a best interest analysis using the statutory factors set forth in Tennessee Code Annotated section 36-1-113(i). The trial court concluded that Mother and Stepfather had proven by clear and convincing evidence that termination of Father's parental rights was in the child's best interest. Father does not raise any challenge to the trial court's finding that termination of his parental rights is in the child's best interests. Therefore, this issue is waived.[5] *See In re Kaliyah S.*, --- S.W.3d ---, No. E2013-01352-SC-R11-PT, 2015 WL 273659, at *19 (Tenn. 2015).

## VI. CONCLUSION

In light of the foregoing, we affirm the trial court's order terminating Father's parental rights. Costs of this appeal are taxed to the Respondent/Appellant Gary S. Because Gary S. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary. The case is remanded to the trial court for further proceedings as may be necessary and are consistent with this opinion.

_____
BRANDON O. GIBSON, JUDGE

---

[5]We are aware that in some cases, this Court has exercised its discretion to address the trial court's best interest analysis despite the parents' waiver of the issue. *See In re Justin K.*, No. M2012-01779-COA-R3-PT, 2013 WL 1282009, at *8 n.6 (Tenn. Ct. App. Mar. 27, 2013). After thoroughly reviewing the record, we agree with the trial court's ruling that clear and convincing evidence establishes that termination of Father's parental rights is in the child's best interest.

8