IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 26, 2024 Session

**IN RE BENTLEY E.**

**Appeal from the Chancery Court for Obion County**
**No. 35-195   W. Michael Maloan, Chancellor**

_____

**No. W2023-00846-COA-R3-PT**
_____

J. STEVEN STAFFORD, P.J., W.S., dissenting.

The Majority Opinion concludes that the trial court erred in finding clear and convincing evidence that Father abandoned the Child by failing to either visit or support him in the four months prior to the filing of the termination petition. *See* Tenn. Code Ann. § 36-1-113(g)(1) (stating that "abandonment" by the parent is a ground for termination of parental rights); Tenn. Code Ann. § 36-1-102(1)(A) (offering several definitions of the term "abandonment," including failure to visit or support the child in the four consecutive months preceding the filing of the termination petition, as alleged in this case). Because I conclude that Tennessee law compels the opposite conclusions, I must respectfully dissent from the Majority Opinion.

**I.**

Here, there is no dispute that Father had little or no visitation with the Child in the relevant four-month period.[1] *See* Tenn. Code Ann. § 36-1-102(1)(E) (defining "failed to visit" as the failure during the relevant time frame "to visit or engage in more than token visitation" with the child); Tenn. Code Ann. § 36-1-102(1)(C) (defining "token visitation" as "nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child"). But the Majority Opinion concludes that Father met his burden to show that his failure to visit was not willful. *See* Tenn. Code Ann. § 36-1-102(1)(I). In reaching this result, the Majority Opinion credits the testimony of Father and Paternal Grandfather that Father's attempts to visit were thwarted by Mother,[2] and concludes that the filing of his

_____

[1] The relevant period for both failure to support and failure to visit is May 19, 2022, to September 18, 2022.

[2] Mother testified at trial that she allowed Father to visit but only under her supervision due to her concerns that Father was using drugs. Mother also testified that she offered visitation at Maternal

petition to establish paternity in May 2021 was enough to preclude a finding of willfulness.

In reaching this result, the Majority Opinion concludes that Father did not willfully fail to visit because, like the parents in the seminal case *In re Adoption of A.M.H.*, Father was "actively pursuing custody of [the child] through legal proceedings during the four-month period[.]" 215 S.W.3d 793, 796 (Tenn. 2007). The problem with this conclusion, however, is that Father was not actively doing anything to pursue custody or visitation during the relevant four-month period.

Specifically, the Majority Opinion concedes that after Father filed his parentage action in May 2021, on May 16, 2022, the trial court ordered Father to submit to a ten-panel drug test before any visitation could be set. Father did not submit to the test until October 2022. Thus, during the entirety of the relevant four-month period, he was subject to an order that conditioned his ability to visit on his submission to a drug test. Father failed to comply with this order until after the termination petition was filed.

Although not cited by the Majority Opinion, ample caselaw exists to guide our analysis here. In fact, in analogous situations, we have repeatedly held that when a parent refuses to cooperate with conditions or requirements in order for visitation to be permitted, the parent has acted willfully in failing to visit. *See, e.g.*, *In re Destyni S.*, No. M2022-00910-COA-R3-PT, 2023 WL 4074805, at *13 (Tenn. Ct. App. June 20, 2023), *perm. app. denied* (Tenn. Sept. 11, 2023); *In re Connor B.*, No. M2021-00700-COA-R3-PT, 2022 WL 2452266, at *5 (Tenn. Ct. App. July 6, 2022); *In re L.U.S.*, No. E2017-01777-COA-R3-PT, 2018 WL 5118529, at *7 (Tenn. Ct. App. Oct. 19, 2018); *In re Jaylah W.*, 486 S.W.3d 537, 552–53 (Tenn. Ct. App. 2015). As thoroughly explained by my learned colleague, the author of the Majority Opinion:

> [I]t is well-settled that a trial court's order requiring that a parent complete some task or meet a condition before resuming visitation does not preclude a finding of willfulness. "This Court has often held that when a parent's visitation has been suspended by the trial court and the parent has the ability to demonstrate a change in situation or behavior that would warrant reinstating visitation but fails to do so, that parent can be found to have

Grandmother's home, but Father declined. Whether this offer of visitation continued after Father filed his petition in May 2021 was unclear. Mother did admit that she sometimes denied Father visitation he requested when she was unavailable. In finding that Father willfully failed to visit, it appears that the trial court may have implicitly credited Mother's testimony. The Majority Opinion, on the other hand, appears to credit the testimony of Father and Paternal Grandfather. Of course, this Court is not permitted to overturn a trial court's explicit or implicit credibility findings absent clear and convincing evidence to the contrary. *See L.A.S. v. C.W.H.*, No. E2021-00504-COA-R3-JV, 2022 WL 17480100, at *10 (Tenn. Ct. App. Dec. 7, 2022) ("Because the juvenile court's findings about abuse and neglect in Father's home are implicit credibility findings, and because the record does not contain clear and convincing evidence otherwise, we leave these findings undisturbed.").

willfully failed to visit." *In re Kiara C.*, No. E2013-02066-COA-R3-PT, 2014 WL 2993845 (Tenn. Ct. App. June 30, 2014) (citing *In re Elijah B.*, E2010-00387-COA-R3-PT, 2010 WL 5549229, at *8 (Tenn. Ct. App. Dec. 29, 2010)). Furthermore, this Court has specifically opined that when a parent chooses not to cooperate with certain conditions, such as obtaining a drug and alcohol abuse assessment, that choice "in refusing to cooperate [ ] constitute[s] a willful decision" to discontinue visitation. *State Dept. of Children's Servs. v. J.A.H.*, No. E2005-00860-COA-R3-PT, 2005 WL 3543419, at *6 (Tenn. Ct. App. Dec. 28, 2005).

*In re Hayden L.*, No. E2018-00147-COA-R3-PT, 2018 WL 4190986, at *6 (Tenn. Ct. App. Aug. 31, 2018); *see also In re Jaylah W.*, 486 S.W.3d at 552–53 (same).

The Tennessee Supreme Court approved of this line of reasoning in *In re Adoption of Angela E.*, 402 S.W.3d 636 (Tenn. 2013). In that case, the trial court suspended the father's visitation until he filed a petition for reinstatement. *Id.* at 638. The father filed a petition to reinstate his visitation, but the petition was dismissed when he failed to appear for the hearing. *Id.* at 642. The father took no further action until after the termination petition was filed two years later. *Id.* Our supreme court concluded that the father "had no reasonable excuse for failing to pursue the petition to reinstate visitation during those two years." *Id.* According to the court, "this [was] not a case in which a parent was actively trying to maintain visitation." *Id.* (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). In reaching this result, the Tennessee Supreme Court cited two of the cases relied upon by the *In re Hayden L.* panel with approval. *See In re Adoption of Angela E.*, 402 S.W.3d at 642 (citing *State Dept. of Children's Servs. v. J.A.H.*, 2005 WL 3543419, at *5; *In re Elijah B.*, 2010 WL 5549229, at *8).

No evidence presented in this case leads me to conclude that these well-settled legal principles should not apply equally to Father.[3] Indeed, Father's actions here clearly align with those cases in which willfulness has been found. Although Father filed his petition to establish parentage in May 2021, the record does not reflect that much action was taken on the petition until one year later in May 2022, when the trial court ordered Father to submit to drug testing. Critically, Father did not comply with the drug-testing order for the next four to five months, and only did so after the filing of the termination petition. Like the father in *In re Adoption of Angela E.*, Father had no reasonable excuse for this delay, as he admitted at trial that he was afraid to take the test because it could have been positive.[4]

---

[3] Our jurisprudence "fosters reliance on judicial decisions" in order to "promote[] evenhanded, predictable, and consistent" rulings. *Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827–28, 111 S. Ct. 2597, 115 L. Ed.2d 720 (1991)) (discussing the doctrine of stare decisis).

[4] Father further explained that if the test had been positive, he would have needed an attorney to explain it. There is no dispute that the attorney who Father retained to file his petition died in November 2021. But as the Majority Opinion notes, Father testified that he hired his current attorney approximately

In refusing to submit to the drug test without reasonable cause, Father voluntarily chose to abandon his request for visitation. ***State Dept. of Children's Servs. v. J.A.H.***, 2005 WL 3543419, at *5. Thus, even if Father did request visitation from Mother during this time frame,[5] his inability to visit was the product of his own choice not to comply with the drug-testing order. *See **In re Audrey S.***, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005) ("Conduct is 'willful' if it is the product of free will rather than coercion."). And the fact that Father submitted to the drug test following the filing of the termination petition does not expiate Father's failure. *See* Tenn. Code Ann. § 36-1-102(1)(F) ("Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child . . . ."). So then, I would conclude that ample evidence was presented that Father willfully abandoned the Child by failing to visit during the relevant time period.

## II.

I also respectfully disagree with the Majority Opinion's conclusion that the trial court erred in finding clear and convincing evidence of abandonment by failure to support. Here, the trial court found that although Father had paid "a nominal amount" to Mother in 2021 and 2022, his payment of support was merely token under the circumstances. *See* Tenn. Code Ann. § 36-1-102(1)(D) (stating that a parent has "failed to support" a child when he or she failed, during the relevant time frame, to "to provide monetary support or the failure to provide more than token payments toward the support of the child"); (Tenn. Code Ann. § 36-1-102(1)(C) (defining "token support" as support that is "insignificant given the parent's means"). The Majority Opinion essentially sidesteps the trial court's finding that Father's payment of support was token by instead concluding that his action in filing a petition to set support and calling the Child Support Office to inquire about support was sufficient to establish that he did not abandon his effort to pay child support.

In my view, however, this case is analogous to ***In re Makenzie L.***, No. M2014-01081-COA-R3-PT, 2015 WL 3793788 (Tenn. Ct. App. June 17, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015). In that case, the trial court found that the parents did not willfully fail to support the child because they were actively seeking custody and "following the process of the Child Support Division . . . in establishing any support that may have been due." *Id.* at *10.

We reversed the trial court on that issue, concluding instead that the parents' failure to support was willful. *Id.* at *18–20. In reaching this result, we first noted that a parent's

---

one month later. As such, it appears that Father was represented by counsel in May 2022. In any event, needing an attorney to explain a positive drug test is not a reasonable excuse.

[5] Father testified that he texted Mother for visitation two or three weeks prior to the petition being filed. Mother denied that Father contacted her for visitation between the May 16, 2022 order and the filing of the petition. Even if Mother denied visitation during this time, however, she was justified in doing so, given the drug-testing order.

"obligation to support . . . exist[s] regardless of whether a court order exists, and regardless of whether the parents were ever married." *Id.* at \*18 (quoting *State ex rel. Hayes v. Carter*, No. W2005-02136-COA-R3-JV, 2006 WL 2002577, at \*2 (Tenn. Ct. App. July 6, 2006)). We further held that the trial court's finding that the parents were actively seeking custody of the child was not sufficient to prevent a finding of willfulness, as "[p]arents who are 'actively seeking custody' through the judicial process are not providing support for their children[.]" *Id.* at \*19. Finally, this Court noted that the fact that the parents were "cooperating" with a petition for child support filed by a third party was not justification for their failure to support. *Id.* at \*20. Instead, we explained that

> even if the parents "were following the process of the Child Support Division [] in establishing any support that may have been due," as the trial court stated, this fact alone does not justify a determination that their failure to support was not willful, nor does it absolve them from the responsibility to support their child financially while the matter was pending a final resolution.

*Id.* We therefore held that the parents' "minimal cooperation" with the pending child support action was not "a justifiable excuse for their not providing support to [their child]." *Id.*

Although certainly not identical, I conclude that the facts presented in this appeal mandate the same outcome. Here, there does not appear to be any reasonable dispute that Father failed to pay more than token support during the relevant four-month period or at any time following the parents' separation.[6] Father's decision to file a petition to set child support, while more effort than the parents in *In re Makenzie L.* took, is simply not sufficient justification for his failure to pay support. Importantly, Father's petition to establish support apparently languished for a year before the trial court entered the order directing Father to obtain a drug test and submit the results to the court before visitation would be ordered. And again, Father thereafter failed to comply with that order for a period of nearly five months, solely because he was afraid that he would fail the drug test. Thus, Father essentially abandoned his petition to obtain visitation and set support during the relevant time period. *See In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at \*6 (Tenn. Ct. App. July 22, 2020) ("While legal action can indicate a party's [desire] to pursue a relationship with a child, a half-hearted or abandoned effort to pursue legal action may not be sufficient to demonstrate a lack of willfulness.").

Moreover, Father's petition alone did not "absolve [Father] from the responsibility

---

[6] The evidence certainly does not preponderate against the trial court's finding that Father's support was token given his means. Father testified that he earned between $2,500.00 and $3,000.00 per month and that he only paid support in the total amount of $1,000.00 in the twenty-seven months since Mother and Father separated. At trial, Father conceded that he should have paid more support.

- 5 -

to support [his] child financially while the matter was pending a final resolution." *In re Makenzie L.*, 2006 WL 2002577, at \*20. The evidence at trial shows that while Father may have reached out to the Child Support Office for guidance during this time, Father had ways to contact Mother, and she had previously accepted his token efforts at support. Indeed, Father did not claim at trial, nor does he argue on appeal, that Mother ever refused any financial support that Father specifically offered to the Child;[7] instead, he points to Mother's alleged refusal to allow Father visitation as evidence of her interference in his ability to support his child. Indeed, by his own admission, Father asserts that he typically paid support only when Mother brought the Child to see him.[8] *Cf. **In re Braelyn S.**, 2020 WL 4200088, at \*9 (holding that using support as "'bribe' to ensure visitation . . . does not align with [the parent's] duty to provide support and in no way justifies his failure to do so"). Still, "attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially." *In re Audrey S.*, 182 S.W.3d at 864. So then, it does not appear that Mother's actions ever actually prevented Father from paying support. *See id.* (holding that failure to support "is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, . . . or amounts to a significant restraint of or interference with the parent's efforts to support . . . the child"). Thus, the trial court did not err in finding that Father failed to meet his burden to show that his failure to provide more than token support was not willful.

## III.

In sum, regardless of whether "Father very much wants to be in this Child's life," as stated by the Majority Opinion, clear and convincing evidence demonstrates that he committed abandonment as that term has been defined by the Tennessee General Assembly and routinely understood by Tennessee's courts. Appellees therefore met their burden to show at least one ground for termination of Father's parental rights. Consequently, I would proceed to consider the second requirement of the termination of parental rights question: whether termination of Father's parental rights is in the Child's best interest. In choosing not to reach this issue due to their analysis of the grounds issue, I must respectfully depart from the Majority Opinion.

---

[7] Father did testify that in the year before the termination trial, Mother directed Father to communicate with her counsel rather than her when he contacted her about visitation and support. Father did not testify that he ever attempted to provide support to the child through Appellees' counsel or by paying any amount into the court. *Cf. **In re Malaysia C.**, No. M2014-01019-COA-R3-PT, 2015 WL 572954, at \*10 (Tenn. Ct. App. Feb. 10, 2015) (holding that after an initial refusal to accept diapers and a car seat from the mother, mother made no further attempts to provide support for the child, and that "the fact that the [prospective adoptive parents] may have refused [the] [m]other's efforts does not excuse her from making those gestures, or from petitioning the court to hold money for the child").

[8] Father testified that it was Mother's responsibility to find him because "it's not me chasing her on a wild goose chase[.]"

<u>s/ J. Steven Stafford</u>
J. STEVEN STAFFORD, JUDGE