IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2024

## IN RE DEREK S. ET AL.

**Appeal from the Chancery Court for Madison County**
No. 81429     Steven W. Maroney, Chancellor

_____

**No. W2023-01001-COA-R3-PT**

_____

This appeal concerns the termination of a mother's parental rights with respect to her two children. The trial court concluded that three grounds for termination were established, and thereafter, it determined that it was in the best interests of the children for the mother's rights to be terminated. Because we conclude that clear and convincing evidence supports the establishment of three grounds for termination as well as the finding that termination was in the best interests of both children, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Gloria K.

Alexander D. Camp, Jackson, Tennessee, for the appellees, Arthur C. and Debra C.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Derek S.[1] ("Derek") and Leo S. ("Leo") (collectively referred to as "the Children") were born to Gloria K. ("Mother") in October 2013 and November 2019, respectively. Mother began using various drugs after the death of her father in November 2018. Her drug usage led to several criminal charges filed in 2019 in Decatur County, Tennessee. As a result of those charges, Mother was sentenced to eight years of probation.  Mother entered

---

[1] This Court has a policy of protecting children's identities in parental termination cases. Therefore, where appropriate, certain surnames appearing herein have been presented by use of initials.

rehab in February 2022, which she alleges is when she ceased using illicit drugs.

During the years Mother engaged in drug use, the Children were also both exposed to various drugs. While in Mother's care, Derek was exposed to and tested positive for methamphetamine. Additionally, the nanny that Mother provided for Derek exposed him to cigarette smoke, which led to ear and sinus issues. During this time, Derek's performance at school significantly deteriorated.

Leo, who was in utero while Mother used drugs, tested positive for opiates at birth. Mother also admitted to using methamphetamine while pregnant with Leo. As a result, Leo suffered from withdrawals at birth, as well as physical deformities afflicting the shape and integrity of his skull. He required surgery to prevent further neurological damage.

Shortly after the birth of Leo, pursuant to a protective custody order entered by the Decatur County Juvenile Court on November 12, 2019 removing the Children from Mother, the Children's great uncle and great aunt, Arthur C. and Debra C. (collectively referred to as "the Relatives"), obtained temporary custody of both Derek and Leo.

On May 31, 2022, the Relatives commenced the present litigation by filing a petition for termination of parental rights and for adoption by a relative with the Chancery Court of Madison County, Tennessee ("the trial court"). The Relatives sought to terminate Mother's parental rights on several grounds, including abandonment, persistent unsafe conditions, and severe child abuse. In support of these grounds, the petition outlined Mother's drug use and its effects on the Children, the fact that Mother had not visited with the Children since their removal in November 2019, and her continuing inability to care for them. Additionally, the Relatives pled that termination of Mother's parental rights was in the best interests of the Children, specifically alleging that the Children had flourished in their custody.

According to the proof at trial, Derek's school performance had markedly improved while under the care of the Relatives. Leo was demonstrating signs of normal development for his age, although the proof reflected he would likely require further surgery on his skull when he turns five. The Relatives testified that they were prepared to care for both Leo and Derek, further stating that the Children were covered under Arthur C.'s insurance plan.

According to the testimony, Derek and Leo had formed a close bond to the Relatives and engaged in various enriching activities. At the time of trial, Leo was not yet old enough to begin school but routinely attended day care. As for Derek, in addition to his improvements in school, there was proof that he regularly enjoyed playing basketball with his church community.

Although Mother testified that she had not engaged in illicit drug use since attending rehab in February 2022, she also testified that she continued to live with Chris F., her

fiancé, with whom she previously used drugs. However, she testified that her fiancé had also stopped using drugs when he entered rehab in 2022, and that he contributed significantly to the financial health of their household, earning approximately $800.00 per week. Mother also noted that her fiancé is currently engaged in litigation for access to two other children, aside from a child he and Mother have.

Following the conclusion of the trial, the trial court entered an order granting termination of Mother's parental rights,[2] concluding that three statutory grounds for termination had been established by clear and convincing evidence. Specifically, the trial court determined that Mother had abandoned the Children by failing to visit, committed severe child abuse against the Children, and that the conditions which led to the Children's removal from Mother's care still persisted.

In addition to concluding that grounds for termination had been established, the trial court held that the termination of Mother's parental rights was in the best interests of the Children. In reaching this conclusion, the trial court determined that, although Mother had recently completed rehab, the proof established that she could not properly care for the Children. Moreover, the court emphasized the many enrichments to the Children's well-being under the care of the Relatives, including the formation of healthy community bonds, improved school performance, as well as better physical and mental health.

This appeal followed.

## ISSUES PRESENTED

Mother raises a single issue for this Court's review, restated slightly herein:

I.      Whether the trial court erred in finding that it was in the best interests of the Children to terminate Mother's parental rights.

Consistent with the direction from the Tennessee Supreme Court in *In re Carrington H.*, we "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016).

## STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *Id.* at 521 (citing *Troxel v. Granville*, 530 U.S. 57,

---

[2] The trial court also terminated the parental rights of Zachary S., the biological father of the Children. He did not appeal the trial court's judgment.

65 (2000)). "Although this right is fundamental and superior to claims of other persons and the government, it is not absolute." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). "Well-defined circumstances" exist "under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015).

These circumstances are statutorily defined, and a court must determine, by clear and convincing evidence, the existence of at least one of these statutory grounds. *In re Andrew L.*, No. E2022-01465-COA-R3-PT, 2023 WL 5013253, at *2 (Tenn. Ct. App. Aug. 7, 2023). Upon establishing at least one statutory ground relative to a parent, a court then must conclude that termination of parental rights is in the child's best interests by clear and convincing evidence. *Id*. "Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth." *In re M.A.B.*, No. W2007-00453-COA-R3-PT, 2007 WL 2353158, at *2 (Tenn. Ct. App. Aug. 20, 2007).

Due to the heightened burden of proof, we employ the following standard of review:

First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

## DISCUSSION

*Abandonment*

The trial court determined that three grounds existed for the termination of Mother's parental rights. We first address the trial court's conclusion that Mother abandoned the Children pursuant to Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(i). As is pertinent to the trial court's findings and this appeal, abandonment occurs when:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed

- 4 -

to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i).

The trial court determined that Mother had not visited the Children within the four months immediately preceding the filing of the Relatives' petition to terminate. It further found that there was no evidence demonstrating that the Relatives obstructed Mother from visiting the Children. In connection with its holding, the trial court noted that, although Mother was initially denied visitation by the Decatur County Juvenile Court on July 20, 2020, she was provided certain conditions that she could complete in order to be granted visitation with the Children. These conditions pertained to her drug use and included, among other things, the submission of a negative drug test and completion of various parenting classes. It is undisputed that Mother failed to complete these prerequisites prior to May 31, 2022, the date the Relatives filed for termination. Emphasizing that Mother had not seen nor had any contact with either Derek or Leo in several years, the trial court concluded that the ground of abandonment had been proven by clear and convincing evidence.

We agree with the trial court's conclusion that there was sufficient evidence to support this ground. Although Mother was provided certain conditions to gain visitation rights on July 20, 2020, she had not completed all the conditions prior to May 31, 2022. Indeed, she still had not completed the prerequisites by the time she testified on May 23, 2023, nor had she visited with the Children. The failure of a parent to complete the required steps to regain visitation rights after a court order suspended such rights supports a finding of abandonment. *In re Angela E.*, 402 S.W.3d 636, 642 (Tenn. 2013). Under these circumstances, we conclude that there is clear and convincing evidence that Mother abandoned the Children pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

*Persistent Conditions*

The second statutory ground relied upon by the trial court for termination of Mother's parental rights is codified at Tennessee Code Annotated section 36-1-113(g)(3). As provided in that statute, a ground for termination is established when:

(3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

Tenn. Code Ann. § 36-1-113(g)(3).

In its order concluding that this ground for termination had been established, the trial court noted that the Decatur County Juvenile Court had (1) entered a protective custody order on November 12, 2019, based upon a petition filed by the Tennessee Department of Children's Services alleging the Children were dependent and neglected, and (2) thereafter entered an order declaring the Children to be dependent and neglected on July 20, 2020. The trial court also found that, although Mother had taken steps toward consistent sobriety since entering rehab, the conditions leading to the Children's removal were still present. In particular, the trial court highlighted that Mother had only been released from a treatment facility a few weeks prior to testifying at trial. Furthermore, it noted that Mother currently resided with her fiancé, Chris F., and determined that, while Chris F. "also entered rehab in 2022, the status or success of his drug recovery effort is not established in the record." In assessing these circumstances, the trial court found that

the unsafe home environment which the Children experienced with Mother and Chris [F.], while improved based upon Mother's personal recovery efforts, still represent an unsafe environment for the Children which would likely cause the Children to be subjected to further abuse or neglect if they returned to that environment. The Court finds that there is little likelihood that these conditions will be remedied at an early date so that the Children can be safely returned to the parent or guardian in the near future. The Court believes it would take an extended period of Mother's demonstrated living in a drug free environment before this could be considered, and Mother has only been in a post treatment residence for approximately one month. The Court finds that continuation of Mother and Children parent-child relationship greatly diminishes the Children's chances of early integration into a safe, stable, and permanent home such as they have found and experienced in the care and custody of the Petitioners.

For the foregoing reasons, the trial court determined that the statutory ground of persistent conditions had been established by clear and convincing evidence.

We agree. As the trial court noted, the focus of this analysis is on the "results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *In re Audrey S.*, 182 S.W.3d at 874. We acknowledge and commend Mother for seeking treatment for her drug usage; however, there is scant evidence in support of Mother's ability to maintain sobriety outside of an inpatient treatment environment. Our doubts are compounded by the fact that Mother continues to live with her fiancé, who exhibits a similar drug abuse history to Mother. Therefore, we agree with the trial court that the statutory ground of persistent conditions has been established by clear and convincing evidence.

*Severe Child Abuse*

As to the last statutory ground, the trial court determined, by clear and convincing evidence, that Mother had committed severe child abuse against the Children pursuant to Tennessee Code Annotated sections 36-1-113(g)(4) and 37-1-102. Among other definitions, severe child abuse is described, in pertinent part, as "[k]nowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]" Tenn. Code Ann. § 37-1-102(b)(27)(E). We have previously determined that prenatal drug abuse supports a finding of severe child abuse. *In re Benjamin M.*, 310 S.W.3d 844, 848 (Tenn. Ct. App. 2009). It is undisputed that Derek, at the age of six, tested positive for methamphetamine while in the care of Mother, and Leo tested positive for opioids at birth. Moreover, as part of its order concerning custody, the Decatur County Juvenile Court found, by clear and convincing evidence, that Mother committed severe child abuse by using drugs while pregnant with Leo, and by knowingly or with gross negligence permitting Derek to consume methamphetamine. Mother was confronted with these findings during her testimony, and she acknowledged that the findings were accurate and that she was responsible for the findings. In light of the foregoing circumstances, we conclude that the ground of severe child abuse has been proven by clear and convincing evidence.

*Best Interests*

After establishing at least one ground for termination, we next assess whether, by clear and convincing evidence, termination of the parent's parental rights is in the Children's best interests. *In re Jacobe M.J.*, 434 S.W.3d 556, 572 (Tenn. Ct. App. 2013) (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)). Tennessee Code Annotated section 36-1-113(i) delineates a non-exhaustive list of factors for a court to consider, if "relevant and . . . applicable to the particular case[,]" in conducting the best interests analysis. Tenn. Code Ann. § 36-1-113(i)(1).

In the instant case, the trial court highlighted various factors in favor of termination, including Mother's drug use, her unstable living conditions precipitated by her addiction,

her lack of a significant relationship with the Children since early 2019, and the dearth of evidence to support her claim that she can maintain a healthy living environment. Of note, the trial court also emphasized the improvement in the Children's wellbeing under the care of the Relatives, as well as their attachment to the Relatives. In view of those circumstances, the trial court determined it was in the Children's best interests for Mother's parental rights to be terminated. We agree.

The record demonstrates that the Children's health has markedly improved under the care of the Relatives, and the Children have established numerous significant community relationships in their new environment. Moreover, the trial court correctly noted that the Children have not had a significant relationship with Mother since early 2019, and it is also clear that the Children suffered considerable neglect under Mother's care, which was notably demonstrated by their exposure to harmful substances and subsequent medical issues. It was also shown that Derek struggled to perform in school while under the care of Mother, whereas his academic progress has improved markedly under the care of the Relatives.

Although Mother has taken commendable steps toward achieving sobriety and stability, we examine the best interests analysis from the perspective of the child, not the parent. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004). As reflected in the record, we conclude that Mother's sobriety, and by extension her ability to care for the Children, is not sufficiently established. Conversely, the Relatives have demonstrated ample ability and desire to support the Children. Therefore, we conclude that, based on the record transmitted to us on appeal, there is clear and convincing evidence that it is in the Children's best interests for Mother's parental rights to be terminated.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE