IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 20, 2014 Session

### IN RE D.H.B. ET AL.

**Appeal from the Chancery Court for Rhea County**
**No. 1057A      Jeffrey F. Stewart, Chancellor**

---

### No. E2014-00063-COA-R3-PT-FILED-APRIL 23, 2015

---

This is a parental termination case that focuses on the minor children of J.D.B. (Father) and J.A.B. (Mother). After Father and Mother divorced, Father married J.M.B. (Stepmother). A year later, Father and Stepmother (collectively, Petitioners) filed a petition seeking (1) the termination of Mother's parental rights and (2) adoption of the children by Stepmother. After a trial, the court found, by clear and convincing evidence, (1) that Mother had abandoned the children by failing to pay child support, and (2) that termination is in the best interest of the children. Mother appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Elizabeth G. Adams, Dayton, Tennessee, for the appellant, J.A.B.

Rebecca L. Hicks, Dayton, Tennessee, for the appellees, J.D.B. and J.M.B.

Andrew S. Cunnyngham, Chattanooga, Tennessee, guardian ad litem.[1]

---

[1]The guardian ad litem adopted the brief of the appellees.

**OPINION**

I.

Mother and Father were married in 2005. Two children were born to their union – D.H.B. and B.G.B. (the Children), in 2005 and 2006, respectively. In 2007, Mother and Father divorced. The divorce decree designated Father as the Children's primary residential parent. Mother was granted supervised parenting time at the home of D.K. (Grandmother), the Children's maternal grandmother.[2]

In a harbinger of the future, there are indications in the divorce decree that Mother had a substance abuse problem, *e.g.*, the decree ordered Mother to undergo a hair follicle drug screen and prohibited her from using alcohol or any illicit drugs in the presence of the Children. Later, Mother was granted "standard" visitation with the Children, but her visits were to be supervised by Grandmother. That visitation consisted of one evening a week and every other weekend. Mother was initially ordered to pay $25 a week in child support, increasing to $132 a week effective October 1, 2007. At Father's request, Mother was subject to random drug screens and prohibited from driving with the Children in the car.

For several months after the parties' divorce, Mother exercised her scheduled visitation. In addition, Mother cared for the Children at Father's home when he was at work. This arrangement did not last, however, because, according to Father, Mother frequently failed to show up, forcing him to call Grandmother or someone else to take care of the Children.

Mother began amassing an extensive criminal record. From May 2008 through March 2013, she was arrested and convicted, pursuant to her guilty pleas, of some fourteen offenses including drug and alcohol-related offenses, theft, aggravated criminal trespassing, attempted fraud, and escape. More than once, Grandmother had to call the police to have Mother arrested. In addition, Mother was convicted of multiple violations of probation. Since the divorce, Mother lived rent-free with Grandmother but was in and out of jail. She briefly held a few jobs and worked "under the table" cleaning houses. Mother admittedly failed to pay child support as ordered; the sporadic, partial payments she did make soon left her with a substantial arrearage. In 2012, Mother was hospitalized for several weeks after contracting a staph infection as a result of her drug use.

---

[2]In addition to the Children, Mother has an older son, B.K., who is not involved in this case. In October 2012, Mother relinquished custody of B.K. to Grandmother, with whom the child had lived since birth.

Petitioners married in 2009. Some six months later, Father adopted Stepmother's two children, who lived with Petitioners and the Children. On March 18, 2010, Petitioners filed a petition to terminate Mother's parental rights so as to facilitate Stepmother's adoption of the Children. The petition "generally" alleged abandonment as grounds for termination. In 2012, Petitioners moved with the four children to Irmo, South Carolina. Father, an electrical field engineer, had secured a new job there after he was laid off by TVA in Tennessee.

After several delays, the bench trial was held on April 24, 2013. At the time of trial, the Children were eight and seven. Mother had last seen them in December 2009, before her incarceration in January 2010. Mother was released from jail in March 2010. The petition was filed a few days later, and Mother had no further contact with the Children from that point forward. She explained that she made calls to inquire about the Children, but Petitioners would not give her any information. According to her, she resigned herself to getting information from Grandmother, who continued to see the Children. For his part, Father testified that Mother never personally contacted him to ask for visitation, but that Grandmother did. Mother did call once, around Christmas of 2009, and provided Father with her new phone number, but left no other messages. Father did not return her call. Father conceded that he was uncomfortable with the Children being around Mother after her criminal issues started. Father permitted Grandmother to continue picking up the Children and visiting with them at her home up until the filing of the petition. He was unaware of how often Mother was present during Grandmother's visits; he believed she was in jail "most of the time." According to Petitioners, Grandmother was welcome any time she wanted to visit the Children and she spoke to the Children every month by telephone. The Children had not received any gifts or items from Mother personally, only from Grandmother.

At the time of trial, Mother, age twenty-seven, had been incarcerated for the past several months, since January 2013, on a violation of probation and charge of possession of drug paraphernalia. She testified her hospitalization was an "eye opener," and she was determined to change. She admitted she had made many "bad choices" in the past, but said she had plans for the future. Upon her release from jail, she planned to obtain her GED with her family's support and then find a job. She testified that the Children only knew her as a mom, not a thief or a drug addict, and she wanted to be there for them.

Petitioners testified that their family of six was loving and close-knit. The Children called Stepmother "mom" and no longer asked about Mother. Stepmother testified she shared an "extremely strong" relationship with the Children and would "die for them." She testified she wanted to adopt them because she loved them and made sacrifices for them because she wanted to, not because she had to. She felt she brought "normalcy" and "stability" to their lives and planned to be with them every day. Father testified the Children no longer asked about Mother. Records were introduced indicating that the Children were in

good standing at school and had no medical issues.

At the conclusion of the trial, the court terminated Mother's parental rights based upon its finding, by clear and convincing evidence, that Mother abandoned the Children by willfully failing to pay child support.[3]  By the same evidentiary standard, the trial court further found that termination is in the best interest of the Children.  Mother filed a timely notice of appeal.

## II.

Mother presents the following issues for our review, as restated slightly by us:

> 1.  Did the trial court err in terminating Mother's parental rights based on abandonment pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv) when the petition failed to provide Mother with notice of said ground for termination?
>
> 2.  Did the trial court err in its decision that termination of Mother's rights is in the best interest of the Children?

## III.

With respect to parental termination cases, this Court has observed:

> It is well established that parents have a fundamental right to the care, custody, and control of their children. While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. A parent's rights may be terminated only upon "(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child." Both of these elements must be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and

---

[3]The trial court found that Petitioners failed to establish the ground of abandonment by failure to visit.

eliminates any serious or substantial doubt about the correctness
of the conclusions drawn from the evidence.

*In re Angelica S*., E2011-00517-COA-R3-PT, 2011 WL 4553233, at *11-12 (Tenn. Ct. App. E.S., filed Oct. 4, 2011) (citations omitted). "As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise." *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004); Tenn. R. App. P. 13(d). Our role is to determine "whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights." *Id*. at 654. Great weight is accorded the trial court's determinations of witness credibility, which court's findings will not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002).

IV.

A.

Mother asserts that the trial court erred in terminating her rights on the ground of abandonment, as defined in Tenn. Code Ann. § 36-1-102(1)(A)(iv), given that the pleadings failed to allege that particular definition of abandonment. Mother argues that, as a result of the deficiency, she "lacked sufficient notice that her parental rights could be terminated based upon that definition of abandonment." Father responds that, assuming arguendo that the notice provided in the pleadings is insufficient, the ground of abandonment by failure to provide support in *the four-month period preceding incarceration* was actually tried by implied consent.

B.

Tenn. Code Ann. § 36-1-113(g) (1) provides for termination of parental rights on the ground of abandonment as defined in Tenn. Code Ann. § 36-1-102. In turn, Tenn. Code Ann. § 36-1-102(1)(A) sets forth five alternative definitions of "abandonment," two of which are implicated by the issues before us. The statute provides, in relevant part, as follows:

> (1) (A) For purposes of terminating the parental or guardian
> rights of a parent or parents or a guardian or guardians of a child
> to that child in order to make that child available for adoption,
> "abandonment" means that:

-5-

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

\* \* \*

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i), (iv).

In the present case, as to grounds, both the original and first amended petitions allege as follows:

Termination of [Mother's] parental rights is sought based upon abandonment as defined in Tennessee Code Annotated § 36-1-102 which Petitioners are prepared to prove by clear and convincing evidence.

Two weeks before trial, Mother filed a motion to dismiss that alleged, in part, that the petition, as amended, failed to comply with due process requirements in that it "fails to allege grounds for termination with sufficient detail and specificity to put [Mother] on notice as to the bases for a deprivation of the right to parent her children." Petitioners' second amended petition followed. It added the following allegations:

[Mother] failed to pay any child support *during the four (4) month period immediately preceding the filing of the original Petition.* She has only exercised token visitation and paid token

support during the entire time period since she was divorced from [Father].

(Emphasis added.)

Mother asserts that the Petitioners' pleadings failed to provide her with proper notice of the specific ground for termination being pursued. Addressing abandonment pursuant to Section 36-1-102(1)(A)(iv), this Court has observed that "[t]he statute is very specific for an incarcerated parent with regard to the relevant time period, limiting the analysis with regard to a failure to support to the period of 'four (4) consecutive months immediately preceding such parent's or guardian's incarceration . . . .' " Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010). *In re Eimile A.M.*, No. E2013-00742-COA-R3-PT, 2013 WL 6844096, at *3(citing Tenn. Code Ann. § 36-1-102(1)(A)(iv)). We have held that "courts must 'strictly apply the procedural requirements in cases involving the termination of parental rights.' " *Id*., (quoting *In re: Landon H*., No. M2011-00737-COA-R3-PT, 2012 WL 113659, at *4 (Tenn. Ct. App. Jan. 11, 2012)).

Here, the original petition alleged only "abandonment" of the Children. When pressed for more specificity, Petitioners amended the petition, for a second time, to allege abandonment by failure to visit or support *in the four months immediately preceding the filing of the petition*. Although the proof at trial revealed that Petitioners were well aware of Mother's repeated periods of incarceration, abandonment by an incarcerated parent was not specifically alleged in the pleadings. Mother argues that the petition failed to provide her with adequate notice of the particular grounds for termination she was called upon to defend. In a case involving the same two forms of abandonment, we have held a petition to be deficient where the "wrong" four-month statutory period is pleaded. *See In re K.N.B.*, No. E2014-00191-COA-R3-PT, 2014 WL 4908505, at *13 (Tenn. Ct. App. E.S., filed Sep. 30, 2014).

C.

Since the petition, as amended, did not allege the relevant time period of "the four . . . consecutive months immediately preceding . . . incarceration," we next consider whether the ground of abandonment by failure to support, as applicable to an incarcerated parent, was tried *by implied consent*. "[A] ground for termination not included in the petition properly can be found if the ground was tried by implied consent." *Eimile A.M.*, 2013 WL 6844096 at *5(citing *In re: Anthony R*., No. M2012-01412-COA-R3-PT, 2013 WL 500829, at *4 n.5 (Tenn. Ct. App. Feb. 8, 2013)). "In order for a court to make such a finding, it must be clear from the record that the evidence presented relevant to the unpled ground had no relevance to any other issue being presented to the Trial Court." *Id*. (citing *In re: S.J.M.*, No.

M2009-01080-COA-R3-PT, 2009 WL 4039430, at *3 (Tenn. Ct. App. Nov. 20, 2009) (stating "Implied consent, however, cannot occur when evidence claimed to be supporting an issue not raised in the pleadings is also relevant to an issue that is actually raised in the pleadings.")). Stated differently, "[i]t must be clear from the record *that the parent fully understood that this particular unpled ground for termination was being tried* and that the parent impliedly consented to the trial of that ground even though it had not been pled." ***Id***. (Emphasis added.)

In the present case, Mother asserts that there is no proof to establish that she impliedly consented to the trial of the ground of abandonment by an incarcerated parent pursuant to Section 36-1-102(1)(A)(iv). In short, we disagree.

It is clear that Petitioners' pleadings did not present their case with reference to subsection (iv). During the parties' opening statements, counsel for Petitioners, Ms. Rebecca Hicks, stated:

> [A]s we sit here today, [Mother] is $22,489 in arrears. The four months preceding the filing of this case, there was no support, no visitation. And since the parties were divorced, she's spent most of her time in jail. There's definitely abandonment. And we would ask the Court to terminate her parental rights on the basis of abandonment.

Petitioners called Mother as their first witness. Mother's counsel objected to questions regarding her entire criminal history as being irrelevant. The following exchange occurred:

> Ms. Hicks [attorney for Petitioners]: It does relate to grounds. [W]hether her failure to support and failure to see the children is willfully.
>
> The Court: I think with regard to support, but we are looking at the four months preceding the filing of the petition. The petition was filed March the 18th of 2010.
>
> *   *   *
>
> So if we take this back to the four months preceding the filing of March the 18th, 2010, that would take us back into December of

2009.[4] So if she was currently incarcerated during that time period, I think you could go back and ask questions about why . . . she was incarcerated, if she was, and why if she didn't support, why she didn't. And I think you could bring it forward.

(Footnote added.) Throughout Petitioners' case-in-chief, attorney Hicks continued to question Mother and other witnesses regarding Mother's contact with the Children, payment of child support, and the time she spent in jail "during that four month period of time preceding March 18th, 2010." In addition, counsel questioned Mother generally about visitation and child support since the parties' divorce. Mr. Ted Engle, counsel for Mother, similarly focused his examination of the witnesses on "that same time period . . . basically, November 18th until March [17th], 2009 and into 2010."

After Petitioners rested their case, Mr. Engle, counsel for Mother, moved to dismiss. The following colloquy took place:

> [Mr. Engle, attorney for Mother]: [Petitioners have] not carried their burden as to the issue of grounds. There's been testimony offered that there was no child support paid during this period, this four month period before she received the final petition. But, also, the proof has shown throughout [Petitioners'] case, that [Mother] was incarcerated during that time.
>
> The statute requires that the lack of visitation and lack of support be willful. She was incarcerated. She was held against her will. She could not walk out and get a job. She could not walk out and see her children. Throughout this time period she was incarcerated. And that right there is a failure on the issue of grounds.
>
> I would also bring to the Court's attention that the abandonment statute contains in it language that address[es] these situations where a defendant is incarcerated. If that is not what's pled here, that is not abandonment that is claimed.
>
> But what's been pled here is essentially subpart small i, [- ]

---

[4]We note that the four-month period immediately preceding the filing of the petition is properly calculated as running from November 18, 2009 through March 17, 2010, the latter date being the day before the petition was filed.

that's the willful failure to support in the four months preceding the adoption petition. I think that the legislature and including the provisions in [iv] . . . is saying explicitly that if a person is incarcerated in those four months immediately preceding the filing, that their incarceration renders any failure to support or visit during those four months to be unwillful because by definition they cannot.

So with that, Your Honor, I would just ask that the petition be dismissed.

Ms. Hicks: Your Honor, first of all, she was not incarcerated the entire time period or the short time period of that four-month period.

\* \* \*

Just because she's incarcerated on something that's totally within her control, doesn't mean that because she's incarcerated that the failure to support is not willful. All her choices have been willful. She has chosen that lifestyle. It's not necessarily in that four month period, but there's a pattern that came before and proves that that's her lifestyle, and that's what she's chosen.

The Court: Have you got a case that says that?

\* \* \*

Mr. Engle: [I]f I might clarify. The proof was that she did have employment prior to the filing of this petition, but [Grandmother] came in and specifically said that she was not employed at any time during the months immediately preceding the filing of the petition. That's the only relative time period here.

She was incarcerated from – early January, until early March 2010. And she was incarcerated up until the very early part of December of 2009. She, basically, had a period there of three to four weeks where she's out and about and able to visit with her children, and [Grandmother] testified that she did. And

-10-

[Grandmother] also testified that throughout that time period, she was doing her best to find a job. She was applying for jobs.

So I think the proof would be a failure at that point to say that during that four month time period it has been established by clear and convincing evidence that there's been a willful failure to visit.

The Court: Well, I think it's abundantly clear based on Exhibit 8.[5] If we take the time line, the four months preceding her incarceration, rather than the four months prior to the filing of the petition, if she was incarcerated in January of 2010, that takes us . . . further back into 2009. Exhibit 8 indicates that she had not made a child support payment from September 15th, 2008, through September the 29th of 2009.

So I think they have put on sufficient grounds for me to overrule your motion to dismiss. If you want to put on some proof, I'll be glad to hear from you.

Trial continued, beginning with Mr. Engle's direct examination of Mother. Mother testified, in relevant part, as follows:

[Q]: And I want to specifically look at one time period that was mentioned earlier. The four months preceding the petition. That would be . . . November 18th, until March 18th.[6] During that time, you were incarcerated part of that time; correct?

Mother: Uh-huh.

Q: How long?

A: All of it, but maybe three weeks.

∗  ∗  ∗

Q: [M]oving back a little bit. There's some mention made of the

---

[5] Exhibit 8 is Mother's child support payment history.

[6] As previously noted, this date should be March 17, the day before the filing of the petition.

four months preceding your incarceration. You were incarcerated January 2010; right?

A: Yes.

Q: So if you add four months from there, we get December, November, October, and September; correct?

A: Yes.

                    \*    \*    \*

Q: And you paid child support on September 29th, 2009; right?

A: Yes.

Q: $140?

A: Yes.

Q: And were you working at that time?

A: Yes. I'm not sure where.

During closing arguments, Ms. Hicks summarized Petitioners' case in pertinent part as follows:

> First of all, we have proven grounds for abandonment. We are relying on 36-1-101(1)(A)(i). And that's for four consecutive months immediately preceding the filing of the petition. The party involved either willfully failed to visit or willfully failed to support or to make reasonable payments toward the support of the child.
>
>                     \*    \*    \*
>
> But she has willfully failed to support the children for, basically, not only the four months preceding the filing of the petition, but since the parties were divorced.

-12-

In response, Mr. Engle reiterated that during the four months prior to the filing of the petition, Mother was incarcerated and therefore did not have the capacity to support the Children. He asserted that Mother's conduct could not be deemed willful under the circumstances and maintained that Petitioners had failed to prove grounds for termination by clear and convincing evidence.

At the conclusion of the trial, the court terminated Mother's rights to the Children on the sole ground of abandonment by failure to pay child support *during the four months immediately preceding her incarceration*. We quote pertinent portions of the court's ruling:

> [N]ow on grounds of abandonment. We first addressed this case before I knew much about the facts of the incarceration of [Mother] with the time frame for abandonment being set forth under [Tenn. Code Ann. § 36-1-102(1)(A)(i)] . . . , which addresses the question of whether the conduct constituting abandonment by [Mother] occurred in the four months . . . preceding the filing of the petition. And as I've stated, the petition was filed on March the 18th of 2010. The testimony . . . shows that [Mother] was incarcerated during the months of January through portions of March of 2010.
>
> Now *that brings into consideration, then, the same code section, but [subsection (iv)] . . . , which talks about if a parent . . . is incarcerated at the time of the institution of the action, then you go back to the four months preceding the incarceration.*
>
> *   *   *
>
> I do think that matter came up during trial, and I think I even acknowledged in some of the testimony that the time frame had changed with regard to support and with regard to Exhibit No. 8, which is collected child support payments.
>
> *   *   *
>
> And, again, *remember, we are discussing the requisite time period, being four months, and the four months goes back to the four months preceding her incarceration* in January of 2010.

(Emphasis added.) On our review of the record, we conclude that the issue of whether

Mother abandoned the Children by willfully failing to pay child support in the four months immediately preceding Mother's incarceration was tried by Mother's implied consent. Admittedly, during the presentation of Petitioners' case, the evidence was initially centered on the months preceding the filing of the petition. In considering Mother's motion to dismiss, however, the trial court shifted its focus to the "correct" statutory period of the four months leading up to Mother's incarceration in January 2010. In addition to the child support payment history, Mother's own testimony acknowledged that the relevant four months were September 2009 until January 2010 and that during at least part of that time she held a job and made only one child support payment.

It is true that Mother argued strenuously and correctly that subsection (iv) rather than subsection (i) is applicable to this case. But, in so doing, she seems to have made this argument to bolster her position that she did not "willfully" fail to pay child support because she was incarcerated and, obviously, not able to seek employment. This being said, it is clear to us that at some point, the trial court shifted its emphasis from subsection (i) to subsection (iv) and thereafter decided this case on this unpled provision, all of which was abundantly clear to Mother.

In our view, the trial record reflects that Mother "fully understood that this particular unpled ground for termination was being tried and that [she] impliedly consented to the trial of that ground even though it had not been pled." **Eimile A.M.**, 2013 WL 6844096 at *5.

D.

Mother does not challenge the substance of the trial court's finding that she willfully failed to support the Children in the critical four months before her January 2010 incarceration. In any event, we have reviewed the relevant evidence, mindful that only a single ground must be clearly and convincingly proven to support termination. **In re Audrey S.**, 182 S.W.3d 838, 862 (Tenn. Ct. App. 2005). At this juncture, we acknowledge, as did the trial court, that it is difficult to discern from the record the exact dates of Mother's many periods of incarceration. The record does contain a March 2010 general sessions court sentencing order which reflects that Mother was credited with time served "since 1/17/10," establishing that her incarceration was on that date forward. Such evidence is consistent with Mother's and Grandmother's repeated testimony that Mother was in jail in "January 2010." Therefore, for purposes of establishing abandonment by failure to support in the present case, the applicable four-month period is September 17, 2009, to January 16, 2010, this later date being the day before the date of her incarceration.

In support of its finding of abandonment, the trial court stated:

There is no dispute about the fact that [Mother] has failed to pay child support. She admits that. Exhibit No. 8 makes it abundantly clear that she has paid very little support.

And *during the requisite time period* [7] . . . , there was only one payment made. That was on September 29th of 2009. She paid $140 in support.

\* \* \*

It seemed that she began to engage in conduct that was really detrimental to her health and to her safety. And she says that she couldn't pay support if she couldn't work, and she couldn't get a job because of her problems.

\* \* \*

But the real issue seems to be, what holds her back mostly, is her addiction to drugs.

\* \* \*

[B]ut . . . when I speak to this issue of support and why she is not working, it's important to look at why she's not working and whether that conduct has changed.

\* \* \*

And all of these things indicate a long history of criminal conduct and behavior. She continues to have these problems.

\* \* \*

[I]n light of the facts and circumstances, I find that she had failed, willfully failed, to support her children as was contemplated. She's not paid child support in compliance with the child support guidelines. And, therefore, I believe that . . . [P]etitioners should prevail with regard to the termination of parental rights on this failure, willful failure, to support.

---

[7] It is clear from the trial court's remarks that it is referring to the four months immediately preceding Mother's incarceration.

(Emphasis added.) Based on the foregoing, the trial court found that Petitioners proved, by clear and convincing evidence, that Mother "has willfully failed to support the [Children] . . . during the relevant four (4) month period pursuant to Tennessee Code Annotated § 36-1-113(g) which constitutes abandonment." In making this determination, the trial court was focused on the four months immediately preceding Mother's incarceration on January 17, 2010.

"Willful failure to support or to make reasonable payments toward support means 'the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child.' " *In re Angela E*., 402 S.W.3d 636, 640 (Tenn. 2013); Tenn. Code Ann. § 36-1-102(1)(D). "A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control." *Id*., (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). "To prove the ground of abandonment, a petitioner must establish by clear and convincing evidence that a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *Id*. (citing *In re Audrey S*., 182 S.W.3d at 864).

At trial, Mother conceded that she paid "little support" since the parties divorced. The proof showed that, for months after the parties divorced, Mother failed to pay child support at all. Thereafter, beginning in March 2008 and continuing until mid-September 2008, she made partial payments that were regularly deducted from her paychecks. Those payments ended on September 15, 2008. Over a year later, on September 29, 2009, Mother made a single payment of $140 – the extent of the child support she paid in the four months prior to her incarceration. Mother testified she was then working – she believed at Akron advertising plant – but did not make a further payment before she was incarcerated in January 2010. Mother was released in March 2010, but paid nothing more until August 2010, long after the termination petition was pending. Mother further testified that in addition to the various jobs she held, she worked cleaning houses and was paid "under the table." The proof further showed that Mother lived with Grandmother and paid no rent or utility expenses. We think the evidence demonstrates that Mother's failure to support the Children was indeed willful – she was capable of working and offered no justifiable excuse for failing to maintain employment and meet her child support obligation.

The evidence does not preponderate against the trial court's finding that Mother willfully failed to support the Children in the four months immediately preceding her incarceration. The trial court did not err in terminating Mother's parental rights on the ground of abandonment pursuant to Tenn. Code § 36-1-113(g)(1), as defined at Tenn. Code Ann. § 36-1-102(1)(A)(iv).

## V.

Having concluded that a ground for termination is clearly and convincingly established by the evidence at trial, we next consider whether the trial court erred in its determination of the Children's best interest. As we earlier noted, before terminating a parent's rights, a court must determine that two things have been clearly and convincingly proven – "not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). We are guided on our review by the non-exclusive list of factors set forth at Tenn. Code Ann. § 36-1-113(i).[8]  In considering the Children's best interest, the trial court expressly considered their present living environment and the "strong," and "meaningful," relationship they have with Stepmother; Mother's repeated failure to make changes to her conduct and circumstances, leading the court to conclude that "that adjustment just is not likely to happen based upon her conduct," and that Mother has not demonstrated an ability to end her criminal activity and drug use in order to establish safe living conditions for the

---

[8]The statute provides that "[i]n determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following":

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or  other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Children; and Mother's failure to support the Children consistent with the child support guidelines.

"[O]nce grounds have been established, the best interests of the children become the paramount focus of the trial court." *Id.* (quoting *In re D.P.M, S.H., and Y.M.*, 2008 WL 4693725, at *11 (Tenn. Ct. App. 2008)). To that end, the question of what is best for a child must be determined from the perspective of the child rather than the parent[s]." *In re B.D.*, No. M2008-01174-COA-R3-PT, 2009 WL 528922, at *18 (Tenn. Crim. App. M.S., filed Mar. 2, 2009) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)). In the present case, the trial court considered the evidence in light of the relevant factors and determined that the Children's interest was best served by terminating Mother's parental rights and allowing the adoption to proceed. The evidence does not preponderate against the trial court's findings. The proof showed that soon after the parties' divorce, Mother turned her focus, for the most part, away from the Children and toward a life of crime and drugs. As the years went by and her conduct resulted in less and less interaction with the Children, Mother failed to change her conduct or circumstances so she would be available or able to parent the Children or assist in supporting them. Mother has had seven years since the divorce to make the Children a priority in her life, and she has failed to do so. At the time of trial, she was incarcerated yet again and had not seen the Children in nearly four years. Absent Grandmother's support, it is difficult to see how Mother could take care of herself much less fulfill her parental responsibilities.

The evidence indicates that the Children are part of a stable family unit and that Petitioners provide for all of their needs. There is no indication that the Children share a meaningful relationship with Mother, but by every indication, they consider Stepmother as their "mom." Nothing in the evidence suggests that Mother will soon, if ever, be able to assume such a role in the Children's lives. Clear and convincing evidence exists to support the trial court's determination that terminating Mother's parental rights and permitting Stepmother's adoption of the Children is in the best interest of the Children.

VI.

The judgment of the trial court terminating Mother's parental rights to the Children, D.H.B. and B.G.B., is affirmed. Costs on appeal are taxed to the appellant, J.A.B. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE