IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 5, 2018

## IN RE D.N. ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-16-844      J. Michael Sharp, Judge**

_____

## No. E2017-02315-COA-R3-PT
_____

This is a termination of parental rights case.  Father/Appellant appeals the trial court's termination of his parental rights to the minor child on the ground of abandonment by willful failure to visit.  Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i).  Because there is clear and convincing evidence to support both the ground for termination and the trial court's finding that termination of Appellant's parental rights is in the child's best interest, we affirm and remand.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Alan R. Beard, Chattanooga, Tennessee, for the appellant, Ervin T.

Lisa Ashley McLain Gaither, Cleveland, Tennessee, for the appellees, Brent E., and Toyetta E.

## OPINION

### I. Background

Courtney N. is the biological mother of the minor children, T.N. (d/o/b July 2011) and D.N. (d/o/b May 2009).[1]  Appellant Ervin T. is the biological father of T.N.  D.N.'s biological father is deceased.  Courtney N.'s parental rights were terminated by the trial

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

court; however, she did not appeal. Accordingly, in the instant appeal, we are concerned only with the termination of Ervin T.'s parental rights to T.N.

Brent E. and Toyetta E. (together "Appellees") were Courtney N.'s foster parents, and she remained close to them after leaving their custody. T.N. and D.N. were removed from Courtney N.'s custody based on allegations that the children were exposed to illicit drug use, lacked proper supervision, and were in danger of psychological or physical harm. By order of May 16, 2013, the Juvenile Court of Bradley County determined that the children were dependent and neglected and placed custody with the Appellees, where the children have remained since that time. Although Appellant testified that after T.N. was removed from Courtney N.'s custody, he was contacted by DCS, through CASA, he did not pursue custody.

On December 8, 2016, Appellees filed a petition to terminate Appellant's parental rights to T.N. and for adoption.[2] As grounds for termination, Appellees averred that Appellant had abandoned T.N. by willful failure to visit and support.[3] Appellant answered the petition opposing termination of his parental rights.

The petition was heard on August 8, 2017. By order of October 24, 2017, the trial court terminated Appellant's parental rights to T.N. on the sole ground of abandonment by willful failure to visit and on its finding that termination of Appellant's parental rights is in the child's best interest. Appellant appeals.

## II. Issues

There are two dispositive issues in this case, which we state as follows:

1. Whether there is clear and convincing evidence to support the trial court's termination of Appellant's parental rights on the ground of abandonment by willful failure to visit.

2. If so, whether there is clear and convincing evidence to support the trial court's finding that termination of Appellant's parental rights is in the child's best interest.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (Tenn. 1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn.

---

[2] As noted above, the petition also sought termination of Courtney N.'s parental rights to both T.N. and D.N.

[3] At the hearing on the petition, Appellees waived the ground of abandonment by willful failure to support and proceeded on the sole ground of abandonment by willful failure to visit.

1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. §§ 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

In its order terminating Appellant's parental rights, the trial court made a specific finding that Appellee, Toyetta E., was a credible witness. When the resolution of an issue in a case depends on the truthfulness of witnesses, the trial judge, who had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See Whitaker*, 957 S.W.2d at 837; *McCaleb*, 910 S.W.2d at 415; *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. Abandonment by Willful Failure to Visit

The trial court found, by clear and convincing evidence, that Appellant's parental rights should be terminated on the ground of abandonment by willful failure to visit pursuant to Tennessee Code Annotated section 36-1-113(g)(1) and Tennessee Code Annotated section 36-1-102(1)(A)(i). In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . .

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102 defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians . . . have willfully failed to visit . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i). Tennessee Code Annotated section 36-1-102(1)(E) states that: "For purposes of this subdivision [36-1-102(1)], 'willfully failed to visit' means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tennessee Code Annotated section 36-1-102(1)(C) further provides that: "For purposes of this subdivision (1), 'token visitation' means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Furthermore, "[a]bandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child." Tenn. Code Ann. § 36-1-102(1)(F).

- 4 -

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tennessee Code Annotated section 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months immediately preceding the filing of the petition to terminate his or her parental rights. In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . . .
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005 (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. Ct. App. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). As previously discussed, this Court reviews questions of law de novo with no presumption of correctness. *Id.*

In its order terminating Appellant's parental rights, the trial court made the following relevant findings concerning abandonment by willful failure to visit:

> [Appellant] knew at all times where his son was living, and knew at all times that his son was in the custody of [Appellees]. [Appellant] not only knew the address, he also knew the [Appellees'] phone numbers.
>
> ***
>
> [Appellant] also had the knowledge and ability to send letters and /or other correspondence to [Appellees] requesting in writing to see his child or to spend time with his child. [Appellant] chose not to do so. [Appellant's]

- 5 -

occasional "pop up" visits were both inconsistent and unannounced.  Even in the light most favorable to [Appellant], he visited, at most, seven times for the period from April 2013 through December [7], 2016.  Therefore, during a period of about 32 months, considering the evidence most favorable to [Appellant], he visited the child less than once every four and a half months.  Furthermore, [Appellant] visited with the child, in the light most favorable to his testimony, for a period of no more than an hour to an hour and a half.  However, the court finds the testimony of [Appellees] to be in agreement on this issue that each of [Appellant's] visits lasted no more than 30-45 minutes during each of his visits.  Therefore, if he visited seven times, he spent a total of less than six hours with his child over more than 32 months.

***

This action or inaction on the part of [Appellant] was always willful and voluntary.  He knew at all times where his son was, he made the choice to do what he did, and was well aware of his options. . . .  [Appellant] made the willful choice to only visit a very limited number of times for a very limited period of time.  [Appellant] was not prevented by [Appellees] from performing his duties as a parent to visit his child . . . .  [Appellant] simply chose to have no more relationship with his child than he did.  There was no climate of hostility between [Appellees] and [Appellant].

***

The court finds that this record fully supports the determination that [Appellant's] failure to visit [T.N.] was willful.  The court further finds that the very limited visits that [Appellant] had with [T.N.] were minimal, and at best, only token.

Turning to the record, the petition to terminate Appellant's parental rights was filed on December 8, 2016; therefore, the relevant four-month time period for this ground is from August 7, 2016 to December 7, 2016.  There is some dispute as to whether Appellant visited T.N. during the relevant period.  Toyetta E., whom the trial court found "extremely credible," testified that Appellant did not visit T.N. during the relevant time period.  Both Brent E. and Appellant testified that Appellant visited at least two times during the relevant time period.  However, Brent E. later conceded that he had been confused about the dates.  Even if we allow, *arguendo,* that Appellant visited T.N. twice between August 7, 2016 and December 7, 2016, the record is clear that Appellant's visits were always short, i.e., 45 minutes to one-and-one-half hours at most.  In this regard, the record clearly and convincingly supports the trial court's finding that, over a period of thirty-two months, Appellant spent less than six hours with the child.  Furthermore, there

was no pattern to Appellant's visits. By his own testimony, Appellant would "pop up" for a visit whenever he felt like doing so. Appellees did not deny him these visits, but we cannot conclude that these visits established any meaningful relationship between Appellant and T.N. Accordingly, we conclude that the record clearly and convincingly establishes that Appellant's visits were no more than token in that they were "of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C). Therefore, we affirm the trial court's termination of Appellant's parental rights on the ground of abandonment by willful failure to visit.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). The focus shifts to the child's best interest. *Id.* at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id.* However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> ***
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> ***
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

- 7 -

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S*., 182 S.W.3d at 877.

In its order terminating Appellant's parental rights, the trial court made the following findings concerning T.N.'s best interest:

> The court finds that [T.N.] has been in the home of [Appellees] since April of 2013. The court finds that [T.N.'s] sibling live in the [Appellees'] home with him. The court finds that [T.N.] has bonded with both his siblings as well as to the [Appellees]. For over four (4) years, this child has enjoyed the consistency of the [Appellees'] home and the routine with his siblings, and [Appellees]. This child . . . has been taken care of by the [Appellees] and provided not only a stable home, but a loving, caring and nurturing home for the last four years of his young life. All of the child's needs are being met . . . . The child refers to [Appellees] as his mother and dad.
>
> ***
>
> The court finds that it would be extremely detrimental and harmful, both emotionally and physically, to remove this child from the [Appellees'] home at this point. Therefore, the court finds that it is in the best interest of this child to terminate the parental rights of [Appellant]. . . .

Turning to the record, there does not seem to be a substantial bond between Appellant and T.N. Toyetta E. testified that, although the child recognizes Appellant, he remains standoffish when Appellant visits. Furthermore, when asked how T.N. reacts to Appellant's visits, Toyetta E. testified:

> A. He would act out.
> Q When you say act out kind of flesh that out for the Court. What would that consist
> of?
> A He would kind of regress back to the way [he was] when [he] came [to live with Appellees]. He would get real destructive. He would get real smart.
> Q You say destructive. What are some of the things the child would do that were destructive?

- 8 -

A Tear his toys apart.

Q I know there were only a few visits you testified to but was this after each visit?

A Yes.

Q And how long would it take you to get the child back to normal?

A About a day.

Furthermore, as found by the trial court, the record clearly shows that T.N. has a strong bong with Appellees. He calls them "mom" and "dad." In addition, he has a bond with his siblings, who also live with Appellees. From the record, T.N. is active in school and church activities. Appellees ensure that T.N. gets all the medical attention he needs. From the record, it is clear that T.N. is well adjusted and well cared for in Appellees' home. From the totality of the circumstances, we agree with the trial court that to remove T.N. from the only stable home he has ever known would be detrimental to his well-being. Accordingly, we conclude that there is clear and convincing proof in the record to support the trial court's finding that termination of Appellant's parental rights is in the child's best interest.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order terminating Appellant's parental rights to T.N. We remand the case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Ervin T. and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

- 9 -