IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 1, 2019

IN RE AUBRIE W.[1]

Appeal from the Chancery Court for Sullivan County
No. 17-CK-41137      John S. McLellan, III, Judge

_____

No. E2019-00862-COA-R3-PT

_____

This is an appeal from the termination of the father's parental rights. The trial court found the petitioners had proved that the father abandoned the child by willfully failing to visit, willfully failing to support the child, and exhibiting conduct showing a wanton disregard for the child's welfare and that termination of the father's parental rights, was in the child's best interest. Following the entry of the order terminating his rights, the father appealed. Finding the record does not clearly and convincingly establish the ground of abandonment by wanton disregard, we reverse the trial court's determination on that ground; however, the record clearly and convincingly established the other two grounds and that termination of the father's parental rights is in the child's best interest. Therefore, we affirm the termination of the father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in part and Reversed in part**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON II and KENNY W. ARMSTRONG, JJ., joined.

Samuel Ervin White, Kingsport, Tennessee, for the appellant, Willie J.

Christina Susanne Stapleton, Kingsport, Tennessee, for the appellees, Chad D. and Andrea D.

**OPINION**

_____

[1] This court has a policy of protecting children's identities in parental termination cases, and therefore, certain names appearing herein are presented by their initials.

Aubrie W. ("the Child") was born out of wedlock in August 2012 to Andrea D. ("Mother") and Willie J. ("Father"), and the Child has lived with Mother since her birth. Father was incarcerated at the time of the Child's birth but was released from custody in November 2012. Before the end of 2012, Mother broke off the relationship with Father because she learned that he was selling drugs again. Thereafter, Father took a paternity test that confirmed he was the father of the Child.

On October 4, 2013, when the Child was fourteen months old, Father was incarcerated for violating his probation by carrying a firearm and for the manufacture, sale, and possession of Schedule II Narcotics; Father pled guilty to the new charges and has remained incarcerated ever since.

On February 4, 2019, Mother and her husband Chad D. filed a petition for the termination of Father's parental rights based on three grounds of abandonment and the Child's best interest.[2] Father was appointed counsel who filed an answer on Father's behalf opposing the petition. The case proceeded to trial in April 2019.

Mother testified that Father saw the Child when taking the paternity test and attended the Child's first birthday party in August of 2013, but he only visited the Child "four or five times tops" during the four months preceding his last incarceration on October 4, 2013. She also stated that the Child, who was six years old at the time of trial, believed her step-father, Chad D., to be her father.

Mother also testified that Father failed to provide any support during the four months preceding his incarceration, other than bringing a toy to the Child's first birthday party in August of 2013. Alvin W., the maternal grandfather, with whom Mother lived during the applicable four-month period, corroborated Mother's testimony that Father

---

[2] As we discuss in more detail in our analysis, because Father was incarcerated when the petition was filed, we may only consider Father's acts and omissions prior to being incarcerated on October 4, 2013. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv). More specifically, with regard to the grounds of abandonment by failing to visit or failing to make reasonable payments toward the support of the child, the relevant period is the "four (4) consecutive months immediately preceding" his October 4, 2013 incarceration. *See id.* However, with regard to the ground of abandonment by conduct exhibiting "a wanton disregard for the welfare of the child," we may consider Father's conduct prior to the four months immediately preceding incarceration. *See In re Michael O.*, No. W2017-01412-COA-R3-PT, 2018 WL 576777, at *5 (Tenn. Ct. App. Jan. 26, 2018) ("Additionally, the court may consider a parent's behavior prior to the four months immediately preceding incarceration in finding behavior that exhibited wanton disregard for the child.") (citing *In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005)).

provided no support and confirmed that he had not seen Father visit more than a handful of times.

Step-father testified that he treated the Child as his own and provided insurance and other means of support for the Child. He testified that, to his knowledge, Father had never provided support for the Child nor had Father telephoned or made any effort to establish a relationship with the Child since being incarcerated in 2013.

Father's counsel attended the trial in person, and Father testified by telephone from prison. Father stated that he only visited the Child four or five times during the applicable four-month period in 2013. After seeing the Child at her first birthday party in August 2013, Father claimed he had been denied further visitation but conceded he never petitioned the court for visitation. Father stated that he provided support by giving Mother cash, although he could not recall how frequently this happened or the amounts he provided. On cross-examination, Father was asked about his relationship with the Child and testified that he had attempted to contact Mother since his incarceration but had been denied any relationship with his daughter since being incarcerated. Father stated that he had been rebuffed by threats of a restraining order and did not have an address or phone numbers to contact Mother or the Child.

On April 18, 2019, the trial court entered an order in which it found that the petitioners had proven three grounds for termination based on clear and convincing evidence. The court found that Father abandoned the Child by failing to visit, by willfully failing to support, and by exhibiting a wanton disregard for the Child. The trial court also found that termination of Father's parental rights was in the Child's best interest. Based on these findings, the court terminated Father's parental rights. This appeal followed.

## STANDARD OF REVIEW

"To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *See In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)).

We review "findings of fact made by the trial court de novo upon the record 'accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.'" *In re F.R.R.*, 193 S.W.3d at 530 (quoting Tenn. R. App. P. 13(d)). However, because of the heightened burden of proof in termination proceedings, this court "must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *See*

*In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010). The trial court's ruling regarding whether the evidence sufficiently supported termination is a conclusion of law, which we review de novo with no presumption of correctness. *Id.*

Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999). Accordingly, Tenn. Code Ann. § 36-1-113(k) explicitly requires courts terminating parental rights to "enter an order which makes specific findings of fact and conclusions of law," whether they have been requested to do so or not. *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 25, 2003) (quoting Tenn. Code Ann. § 36-1-113(k)). These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. When a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003).

## ANALYSIS

### I. GROUNDS FOR TERMINATION

Abandonment is a ground for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). For the purposes of terminating parental rights, "abandonment" may be established by proving that:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

### A. Failure to Visit

"Abandonment" can be found when the parent has failed to visit the child for a period of four consecutive months immediately preceding the parent's incarceration. Tenn. Code Ann. § 36-1-102(1)(A)(iv). Because Father was incarcerated when the

petition was filed and has been incarcerated since October 4, 2013, we may only consider Father's acts and omissions during the four months immediately preceding his incarceration. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Audrey S.*, 182 S.W.3d at 871. Thus, the relevant period for us to consider is the four months from June 4, 2013, until October 3, 2013.

The statute defines "failed to visit" as "the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). "Token visitation" means "visitation, under the circumstances of the individual case, constitut[ing] nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C). Whether a parent failed to visit a child is a question of fact. Whether a parent's failure to visit constitutes willful abandonment is a question of law. *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). We review questions of law de novo with no presumption of correctness. *Id.* (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810).

Prior to 2018, the statutory definition of abandonment placed the burden of proof on the petitioner to show that the parent's failure to visit was "willful." In 2018, the General Assembly amended the statute to shift the burden of proof to the parent or guardian to show that his or her failure to visit was not willful. For cases filed on or after July 1, 2018, Tennessee Code Annotated § 36-1-102(1)(I) now provides:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I). Here, Mother and her husband Chad D. filed the petition on February 4, 2019. Accordingly, Father has the burden to show that his failure to visit the Child was not willful. Concerning willfulness in the context of abandonment for purposes of termination of parental rights, this Court has stated:

> In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free

will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d at 863-64 (internal citations and footnotes omitted).

Father does not dispute that he only visited with the Child four or five times for approximately two hours each time during the relevant period. The last two times Father was present with the Child occurred on August 29, 2013, the child's first birthday party, and thereafter during the DNA test. Father testified that his failure to visit the Child thereafter was due to Mother denying him visitation. Father also takes the position that four to five visits are more than token visitation; thus, the ground was not proven.

In contrast, Mother contends that Father's short, infrequent visits were token. Mother states that in the four months prior to his incarceration, Father could have easily reached out to set up more consistent visitation with the Child or could have requested scheduled visitation through the court. Although Mother concedes she changed her contact information after Father's October 2013 incarceration, she insists Father had multiple ways to contact her during the relevant period.

The trial court found Father's contentions that Mother denied him visitation with the Child unpersuasive and that Father failed to take any affirmative steps to regain contact with his child during the relevant period. Based on these and other facts, the trial court ruled that Father abandoned the Child by willfully failing to visit the Child for more than token visitation during the four months preceding his October 2013 incarceration.

Whether a parent failed to visit or support a child is a question of fact. *See In re Keri C.,* 384 S.W.3d 731, 748 (Tenn. Ct. App. 2010) (whether visitation should be characterized as token is a fact-intensive inquiry to be decided on a case-by-case basis). Here, it is undisputed that Father only visited the Child four or five times for approximately two hours per visit during the statutory four-month period. Having considered the quality and quantity of Father's visits, the evidence does not preponderate against the trial court's finding of fact that the visits were merely token. Moreover, our conclusion regarding Father's visitation is consistent with other cases involving token visitation. *See, e.g., In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *12 (Tenn. Ct. App. Apr. 20, 2016) (four visits in a four-month period constituted token visitation); *In re L.J.*, No. 2014-02042-COA-R3-PT, 2015 WL

- 6 -

5121111, at *4 (Tenn. Ct. App. June 29, 2015) (attending three of eight offered visitations was token visitation); *In re E.L.R.*, No. E2014-00394-COA-R3-PT, 2014 WL 6735394, at *7 (Tenn. Ct. App. Dec. 1, 2014), (seeing the child five times in the four-month period was token visitation); *In re Joseph G.*, No. E2012-2501-COA-R3-PT, 2013 WL 3964167, at *9 (Tenn. Ct. App. July 31, 2013) (weekly visits for only two of the four months constituted token visitation); *In re Hope A.A.*, No. E2012-01209-COA-R3-PT, 2013 WL 1933026, at *11 (Tenn. Ct. App. May 10, 2013) (five visits for a total of ten hours was insufficient); *In re Keri C.*, 384 S.W.3d at 750-51 (four or five visits amounted to token visitation). We affirm the trial court's finding of fact that father willfully failed to visit.

Whether a parent's failure to visit constitutes abandonment is a question of law. *See In re Adoption of Angela E.*, 402 S.W.3d at 639. We review questions of law de novo with no presumption of correctness. *Id.* (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Having considered the record and finding that the evidence does not preponderate against the trial court's finding of fact that the visits were merely token, we also agree with the trial court's legal conclusion that Father's failure to visit during the relevant period constitutes abandonment.

Accordingly, we affirm the trial court's ruling that the petitioners proved the ground of abandonment by willful failure to visit by clear and convincing evidence.

## B. Failure to Support

"Abandonment" can be found when the parent has failed to support the child for a period of four consecutive months immediately preceding the parent's incarceration. Tenn. Code Ann. § 36-1-102(1)(A)(iv). As determined above, the relevant period for us to consider is the four-month period from June 4, 2013, until October 3, 2013. For purposes of terminating the parental rights of a parent to a child on the ground of abandonment under Tenn. Code Ann. § 36-1-102(1)(A), "failed to support" or "failed to make reasonable payments toward such child's support" means:

> [T]he failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period[.]

Tenn. Code Ann. § 36-1-102(1)(D). "Token support" means that "the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

As discussed above, Father carries the burden of proof by a preponderance of the evidence to show that his failure to support was not willful. *See* Tenn. Code Ann. § 36-1-102(1)(I). Failure to pay support is "willful" if the parent is "aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, WL 22794524, at *5). A parent cannot be said to have abandoned a child when his failure to support is due to circumstances outside of his control. *Id.*

At trial, Father testified regarding his income and expenses during the relevant period. He earned money from selling drugs and was unable to state exactly how much income was generated. He admitted that he assisted his girlfriend with her bills and expenses. He claimed he gave support payments in cash to Mother, but he neither recalled the amounts or dates of such payments nor provided documentation of any payments.

Mother testified that Father never provided financial assistance and did not provide supplies for the Child other than bringing a gift to the Child at her first birthday party. Mother's testimony is corroborated by the maternal grandfather's testimony that there was no financial support given to Mother during the relevant period, during which Mother and the Child were residing with the maternal grandparents.

In its written findings of fact and conclusions of law, the trial court found that Father had the means to provide support for his child and failed to pay support for the Child other than token support, at best, during the relevant period and that the petitioners proved the ground of abandonment by failing to support the child. Based on the foregoing and other evidence in the record, we affirm the court's determination that Father abandoned the child pursuant to Tenn. Code Ann. § 36-1- 102(1)(A)(iv) by failing to provide support within the four-month statutory period.

## C. Conduct Exhibiting Wanton Disregard

Abandonment by conduct exhibiting wanton disregard is designated as a ground for terminating parental rights and is defined as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or . . . during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). This court has stated that Tenn. Code Ann. § 36-1-102(1)(A)(iv) "reflects the commonsense notion that parental incarceration is a strong indicator that there may be other problems in the home that threaten the welfare of the child." *In re Audrey S.*, at 866. "A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id.* (citing James G. Dwyer, *A Taxonomy of Children's Existing Rights in State Decision Making About Their Relationship*, 11 Wm. & Mary Bill Rts. J. 845, 958 (2003)). However, incarceration alone does not satisfy the test for abandonment under § 36-1-102(1)(A)(iv). *Id.* To sustain the ground, the court must find "by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *Id.* Accordingly, a parent's incarceration is "a triggering mechanism" that allows the court to "take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.*

Unlike the relevant period for abandonment for failure to visit and failure to support, the relevant pre-incarceration period for conduct exhibiting wanton disregard referred to in Tenn. Code Ann. § 36-1- 102(1)(A)(iv) "is not limited to acts during the four-month period immediately preceding the incarceration." *In re Jeremiah T.*, No. E2008-02099-COA-R3-PT, 2009 WL 1162860, at *8 (Tenn. Ct. App. Apr. 30, 2009) (citing *In re Audrey S.*, 182 S.W.3d at 871). To the contrary, "the court may consider a parent's behavior prior to the four months immediately preceding incarceration in finding behavior that exhibited wanton disregard for the child." *In re Michael O.*, 2018 WL 576777, at *5 (citing *In re Audrey S.*, 182 S.W.3d at 871). However, this extended window does have a limiting factor. As we explained in *Michael O.*, "In order for a parent to disregard or show indifference to a child, the parent must know of the child's existence." 2018 WL 576777 at *6 (citing *In re Anthony R.*, No. M2014–01753–COA–R3–PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015)) (other citations omitted). Thus, the relevant time cannot precede the Child's conception and may be limited to when the father knew or should have known that he was the biological parent. S*ee In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *12 (Tenn. Ct. App. June 6, 2017) (holding that it was inappropriate to consider the parent's poor conduct prior to his knowledge of the child's existence). "Thus, even though the statutory meaning of the word 'child' encompasses the time at which the child was conceived up until its eighteenth birthday, we must construe Tennessee Code Annotated section 36-1-102(1)(A)(iv) 'to require that the father has knowledge of the child at the time his actions constituting wanton disregard are taken.'" *In re Michael O.*, 2018 WL 576777, at *6 (quoting *In re E.C.*, 2017 WL 2438574, at *12).

Accordingly, the issue is whether Father's conduct prior to incarceration but after knowing of the Child's existence exhibited a wanton disregard for the welfare of the Child. *See id.*

As noted earlier in this opinion, the trial court must make specific findings of fact and conclusions of law in parental termination cases. Tenn. Code Ann. § 36-1-113(k). Moreover, "Tenn. Code Ann. § 36–1–113(k) explicitly requires courts terminating parental rights to 'enter an order which makes specific findings of fact and conclusions of law' whether they have been requested to do so or not." *In re Audrey S.*, 182 S.W.3d at 861 (citing *In re S.M.*, 149 S.W.3d at 639; *In re M.J.B.*, 140 S.W.3d at 653–54).

The only "specific findings of fact and conclusions of law" set forth in writing by the trial court specific to the ground of wanton disregard read:

> That pursuant to T.C.A. §36-1-113(g)(1) the record in this matter establishes by clear and convincing evidence that [Father] abandoned the minor child within the meaning of T.C.A. §36-1-102 as to wanton disregard prior to incarceration.

As we consider whether the foregoing sufficiently complies with the mandate in Tenn. Code Ann. § 36-1-113(k) and whether the facts in the record clearly and convincingly establish the ground of abandonment by exhibiting conduct of wanton disregard for the Child, we find it appropriate to consider other cases in which we affirmed the trial court's finding of wanton disregard. *See In re Kierra B.*, No. E2012-02539-COA-R3-PT, 2014 WL 118504, at *8 (Tenn. Ct. App. Jan. 14, 2014) (Father showed a wanton disregard for child by engaging in "criminal behavior [that] was serious and detrimental to his child's welfare" and which resulted in him being "absent from [child's] life for most of her childhood"); *In re K.F.R.T.*, 493 S.W.3d 55, 61 (Tenn. Ct. App. 2016) (finding that father's behavior was part of a broader pattern of conduct that rendered him unfit because he "was arrested for theft, multiple D.U.I. offenses, repeated traffic offenses, domestic violence against the biological mother of the children central to this appeal, multiple illegal border crossings, and even extortion"); *In re Donte N.*, E2013-01617-COA-R3-PT, 2014 WL 201612, at *8 (Tenn. Ct. App. Jan. 17, 2014) (finding that father exhibited a wanton disregard for his children after he failed to comply with the permanency plan and moved out of state, where he was then convicted of several offenses and received two one-year sentences for charges involving minors); *In re C.L.D.*, No. M2008-02805-COAR3-PT, 2009 WL 1684667, at *7 (Tenn. Ct. App. June 15, 2009) (concluding that mother exhibited a wanton disregard for the children by, among other things, "being arrested approximately forty-seven times"; leaving two of the children "with her grandmother who, admittedly, was unable to care for them"; and leaving the youngest child "in the care of complete strangers"); *In re Selena L.*, No. E2015-02059-COA-R3-PT, 2016 WL 4056185, at *12 (Tenn. Ct. App. July 27, 2016) (finding that "Mother's conduct prior to her incarceration, including both her criminal activity and her illegal drug use, clearly and convincingly constituted a wanton disregard for the welfare of the Children"); *In re Charles K. Jr.*, No. M2015-00714-COA-R3-PT, 2016 WL 3036049, at *10 (Tenn. Ct. App. May 19, 2016) (finding clear and convincing

evidence that father showed wanton disregard for the children where father "exhibited a substantial amount of criminal behavior, . . . engaged in domestic violence toward Mother while in the presence of the Children, and . . . failed to address his mental health and substance abuse issues").

By comparing Father's conduct during the relevant period in this case with the above cases, and considering the fact the trial court set forth its conclusion of law that the ground of wanton disregard had been proven without identifying the specific findings of fact upon which the conclusion was based, we conclude that the ground has not been established by the requisite standard.

Accordingly, reverse the trial court's finding that the ground of abandonment by wanton disregard was established.

## II. BEST INTEREST

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> > (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> >
> > (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> >
> > (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> >
> > (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> >
> > (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); see also *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

We acknowledge Father's current efforts to rehabilitate himself and his desire to build a relationship with the Child. However, Father was still incarcerated at the time of the hearing and will not be released for at least another year. The Child has bonded with her step-father, and a change of caretakers at this point in the Child's life would be detrimental to her emotional condition when she has not visited with Father since her first birthday and does not know her step-father is not her biological parent. *See* Tenn. Code Ann. § 36-1-113(i)(5). The Child should be allowed to achieve permanency and stability in her current home. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. We affirm the trial court.

## In Conclusion

We reverse the trial court's determination that the ground of abandonment by wanton disregard for the child's welfare was established. However, we affirm the trial court's determination that two other grounds were established and that termination of Father's parental rights is in the Child's best interest. Accordingly, we affirm the termination of Father's parental rights. Costs of appeal are assessed against Father.

_____
FRANK G. CLEMENT JR., P.J., M.S.